```
                                                                    1

 1                        UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF NEW YORK
 2

 3   - - - - - - - - - - - - - - - - X
                                                     09cv4663
 4   UNITED STATES OF AMERICA,

 5             Plaintiff,

 6             v.                          United States Courthouse
                                           Brooklyn, New York
 7   TD BANK ACCOUNT NO
     7920060725
 8
                                           April 28, 2010
 9             Defendant.                  2:45 p.m.

10   - - - - - - - - - - - - - - - - X

11
                   TRANSCRIPT OF PROCEEDINGS
12              BEFORE THE HONORABLE JOHN GLEESON
                   UNITED STATES DISTRICT JUDGE
13

14   APPEARANCES:

15   For the Plaintiff:        BENTON J. CAMPBELL, ESQ.
                               United States Attorney for
16                             the Eastern District of New York
                               BY:  KAREN R. HENNIGAN
17

18   For the Defendant:        SHELDON EISENBERGER, ESQ.
                               30 Broad Street
19                             New York, N.Y. 10004

20

21   Court Reporter:           Burton H. Sulzer
                               225 Cadman Plaza East
22                             Brooklyn, New York 11201
                               (718) 613-2481
23                             Fax (718) 613-2505

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by CAT.


                   Burton H. Sulzer - OCR, CM, CRR
```

2

1               (Open court-case called-appearances noted.)
2               THE COURT:  Is someone here for JPMorgan Chase?
3               MS. WEISS:  Andrea Weiss for JPMorgan.
4               THE COURT:  All right.  The parties to the case want
5     the case to go away?
6               MS. HENNIGAN:  Yes, your Honor.
7               We have prepared a stipulation and order of
8     dismissal, and I have signed the stipulation.  I believe that
9     there is one issue that Mr. Eisenberger wanted to raise for
10    the court.
11              MR. EISENBERGER:  Yes, your Honor.
12              I requested that the stipulation include that it
13    should be dismissed with prejudice.  I've no problem with
14    carving out any criminal action of course, if there is
15    something down the road that happened, but this has been a
16    civil action.  We filed an answer and a counterclaim and if
17    we're going to dismiss, I'd like to have it dismissed with
18    prejudice.
19              THE COURT:  Okay.
20              MS. HENNIGAN:  I'm handing up the draft, your Honor.
21              THE COURT:  Is this dismissed with prejudice except
22    for any possible criminal action to be brought in the future?
23              MR. EISENBERGER:  Yes.
24              MS. HENNIGAN:  The draft in front of your Honor does
25    not say that, it is silent with respect to prejudice.

Burton H. Sulzer - OCR, CM, CRR

1           It is our position that the stipulation should be
2  without prejudice.  We are dismissing this case prediscovery
3  and to tie the government's hands for something that could
4  come up down the road just seems to be unreasonable at this
5  point.
6           MR. EISENBERGER:  Your Honor, I want to comment.
7  You're right that it's prediscovery on behalf of the
8  government's side, they haven't provided me with any
9  documents.
10          We have fully complied with the subpoena that has
11 been served on my client.  In the criminal action -- I believe
12 that it was for documents with regard to a grand jury that we
13 have provided.  We have also provided documents with regard to
14 the civil action and we have also made available my client on
15 three occasions that the government was able to interview him.
16          So as far as the prediscovery, the prediscovery is
17 only on one side, but the other side did comply and provide
18 all the documents.
19          THE COURT:  Thank you.
20          MR. EISENBERGER:  I'm sorry.
21          THE COURT:  It's all right.
22          I don't know why I would resolve this now.  It's
23 like an advisory ruling.  I don't need to determine whether
24 this is with or without prejudice unless some other lawsuit is
25 brought and you would move to dismiss it.

1      But I take it you're not opposing the dismissal of
2 this action at the moment?
3           MR. EISENBERGER:  No, I'm not, your Honor.
4           THE COURT:  So I don't want to go through all the
5 various permutations of possible future lawsuits to see if all
6 of them should properly be snuffed out now.
7           I don't know why I would do that.  So I will leave
8 it the way it is.  If there is another lawsuit brought on the
9 civil side, you can move to dismiss it and then we'll have the
10 argument that we otherwise might have now.
11          Fair enough?
12          MR. EISENBERGER:  Thank you, your Honor.
13          In that case, if I may, if the court could give me
14 the document I will sign it.
15          THE COURT:  All right.
16          Here's my question for you.  That is, the question
17 of course comes to mind because I've got this missive from a
18 nonparty, it doesn't seek to be a party so I'm not -- no
19 offense to Ms. Weiss, but I'm not bowled over by JPMorgan
20 Chase's interest in this, but it made me wonder about the
21 following: we're going to dismiss this lawsuit and in essence,
22 I think, go back to status quo ante.
23          These funds were in the TD bank account of Mr.
24 Kahan, correct?
25          MS. HENNIGAN: Yes, your Honor.

5

1    THE COURT:  But the stipulation doesn't return the
2 money to TD Bank, it returns the money to Kahan?
3    MR. EISENBERGER:  That's correct.
4    THE COURT:  Why?
5    MR. EISENBERGER:  It is my understanding that the
6 government has put it into some other account, an interest
7 bearing account that has to be now returned.
8    So rather than bringing it to TD Bank, I've
9 requested that it be returned to possession of Max Kahan, Inc.
10 and they could deposit it into any bank that they would like
11 to.  We're not married to the TD Bank; it's not TD's property,
12 it's Max Kahan's property.
13    THE COURT:  If it went back to TD Bank would TD Bank
14 just give to it Kahan?
15    MS. HENNIGAN:  It was held in the name of Max Kahan
16 Inc.  I'm not sure that account is still open.  Counsel might
17 be able to tell us.
18    THE COURT:  The reason I asked the question is there
19 is a reference here to some state law based bank to bank
20 obligation on the part of TD Bank because of the fraud
21 committed on JPMorgan Chase, and I was wondering whether the
22 stipulation to have a check written from the government to
23 Kahan was designed to kind of cut out that potential middle
24 problem.  Was it?
25    MR. EISENBERGER:  Yes.

1  THE COURT: All right. Since we're essentially
2  undoing this lawsuit, and since potentially there is a
3  nonparty whose interests impinged or affected adversely by our
4  doing it in this way, why shouldn't I require you to go back
5  and you and TD Bank fight whatever battle is going to be
6  fought with JPMorgan Chase over whether these funds go to
7  Kahan or back up the line to Chase?
8  MS. HENNIGAN: Your Honor, the government's
9  position, we were not seeking to cut off JPMorgan's ability to
10 seek the funds through TD Bank.
11 THE COURT: You just went to get out of the lawsuit.
12 MS. HENNIGAN: We want to make it as easy as
13 possible for the Secret Service to get the money back to Kahan
14 Inc.
15 If that account still exists, we're happy to return
16 the money to TD Bank, if it's physically possible for the
17 Secret Service to issue the money to them.
18 THE COURT: Why wouldn't that be the fair outcome
19 here, whatever rights they have or don't have can be litigated
20 hopefully in some other court?
21 MR. EISENBERGER: If I may address it on two bases,
22 first, on fairness and then on the legal issue?
23 On fairness, we believe that the entire transaction,
24 the entire seizure was not only improper but there was really
25 no basis.

1    I have not been a party to any of the conversations
2 with your Honor, but based on what we provided, and based on
3 what we have seen, there was really no basis.  We are forgoing
4 pursuing any legal fees and costs in resolving this matter
5 with the government.
6    I believe that if we had pursued this we would have
7 been entitled to it because I think we would have had a
8 showing that the government had no basis whatsoever to seize.
9    From what I understand, my years of practice, they
10 don't act as a collection agency for any bank or for anyone.
11 They were obviously proceeding on what they believed was be
12 the correct thing to do.
13    On the legal basis, legally there is no motion
14 before this court.  To give JPMorgan Chase an opportunity to
15 be able to come in and try to get a prejudgment attachment
16 again would be an undue hardship, it would just continue the
17 prejudice that my client has suffered, first, by the
18 government and then it would be by JPChase.
19    They have had plenty of time to come into court,
20 they have had plenty of time to make a motion if they chose to
21 have done so -- they did not do so; therefore, this is my
22 property.
23    I may dispose of the property in any manner that I
24 may choose to direct the distribution of these funds to any
25 account, to any account that I choose.  So, therefore, to

1  force me to bring it back into TD Bank, I believe that that
2  might not have any substance in law, Judge.
3              THE COURT:  I think we understand each other, but
4  it's not a matter so much of affording a nonparty some right,
5  it's really a matter of undoing what was done.
6              You have a complaint that has been filed by the
7  government after which a summons and warrant for the arrest of
8  articles in rem was issued by me.
9              Pursuant to that latter document money was taken by
10 the government from TD Bank.  Now there's a joint desire here
11 to undo both of these.
12             The complaint is going to be dismissed on the
13 government's motion.  I am essentially vacating the summons
14 and warrant of arrest for articles in rem.  Logically, it
15 seems to me if we're doing that, then the government ought to
16 give the money back from the entity from which it was seized,
17 especially if by not doing that -- it's not so much a matter
18 of affording somebody a right -- especially if I have by doing
19 otherwise, I deprive a nonparty of some legal recourse.
20             I know you say you'll win on the merits, but that's
21 not the issue here.  Implicit in what you're saying is if we
22 undid what was done and if the money went back to TD Bank,
23 then there would be in state court an application for an order
24 of attachment brought by JPMorgan Chase.
25             MR. EISENBERGER:  Which they would lose, your Honor.

Burton H. Sulzer - OCR, CM, CRR

1  THE COURT: Fine.
2  MR. EISENBERGER: They can go for the same
3  attachment. My client is domiciled and doing business in New
4  York. Whether they put it back in TD Bank or whether they put
5  it back in the Chase Manhattan Bank account, any bank account,
6  they have the same right to proceed for an order of
7  attachment, which we believe that they will not have the
8  ability to do.
9  THE COURT: They have a right to proceed to an order
10  to attach these funds against the bank if it goes back to
11  Kahan?
12  MR. EISENBERGER: What I'm concerned about, and I
13  have no idea, I'm not privy to any action that Chase might
14  have with TD Bank, my client might get embroiled into a
15  litigation between the two banks. TD Bank might take action
16  that might not be proper, which would then cause us to have to
17  fight a different venue.
18  This might be a fight solely between TD Bank and
19  Chase. Why should my client be subject to that type of a
20  situation where they are an innocent party?
21  TD Bank is doing business in New York, they have
22  more than enough money. My client is still around in
23  business. If somehow or another there's an action brought and
24  my client is brought into the state action, my client's
25  prepared to litigate that, but it doesn't give anyone a right

10

1  to attach the proceeds.
2          THE COURT:  That is precisely the situation you were
3  in when the government swooped in and got this warrant from
4  me.
5          MR. EISENBERGER:  There is one slight difference.
6  If the government would have left it in TD Bank then I would
7  agree with your Honor, all they have to do is to vacate the
8  order of attachment.
9          What they did is they took the funds out of the
10 account and put it into a different account.  Now, by vacating
11 the order of attachment, those funds now belong to my client.
12 I have a right to direct the government or the U.S. Treasury
13 where I would like to have the check, I would like to have it
14 in the form of a check or a wire transfer to any banks that I
15 choose.
16         I'm not foreclosed, that's my property, Judge, it is
17 my property.  I see of no basis where we just, you know, turn
18 back the clock and put it back into TD Bank.  If they had left
19 it in TD Bank I would agree with your Honor, but they didn't
20 do that.
21         MS. HENNIGAN:  Even if we had left it in TD Bank it
22 was in a bank account that had more than the amount of money
23 we were seizing, so it would have had to go into a different
24 account in order to freeze it, logistically speaking.  So I
25 don't follow the logic.

1      MR. EISENBERGER:  The logic is that you did do that,
2 you did take it out; therefore, I'd like it back in the form
3 of a check.  Nobody can dictate to my client where that check
4 should be deposited.
5      THE COURT:  What are the obligations that flow from
6 the bank in which the funds are deposited to a bank from which
7 they were fraudulently withdrawn?
8      There is a reference here -- the longer I'm on this
9 job the less reticent I am to admit that there is lots of
10 stuff I don't know about, and I don't know much about the
11 banking law.
12      Are there some obligations under the banking law?
13 JPMorgan got defrauded, they took the money out of JPMorgan
14 Chase by pretending to be this account holder.  The money goes
15 to HSBC.  Then in exchange for some gold it gets transferred
16 to Kahan's account, right?
17      MR. EISENBERGER:  Yes.
18      THE COURT:  I don't know what the obligations are,
19 if any, that run from that end of the line bank, here TD Bank,
20 to the bank that allowed itself to be defrauded out of one of
21 its customer's money.
22      MR. EISENBERGER:  Your Honor is making reference to
23 a particular document, I haven't seen anything.  I'm sorry.
24 You have a letter from JPMorgan?
25      THE COURT:  It says it was e-mailed to you.  Here,

1  take a look at it.
2         (Pause.)
3         THE COURT:  Let's take the guilty plea.  We will
4  call this again.
5         (Recess.)
6         THE CLERK:  Second call on U.S. versus TD Bank.
7         MR. EISENBERGER:  Thank you very much for allowing
8  me to look at your copy.  I received one from the bank as
9  well.
10        Your Honor, my understanding of Section 134(5) of
11 the New York Banking Law, it starts off that it requires a
12 motion and a request for a restraining order.
13        There is, in addition to that, it does allow between
14 banks, where there is a bond that the banks have to apply, but
15 there are exceptions to where it would apply, your Honor, and
16 that they would be able to in effect prevent the bank from
17 disbursing funds.
18        In this particular case it doesn't apply for several
19 reasons.  The first reason is, as I previously stated, the
20 money is not in TD Bank, it's outside in a different account
21 that they are seeking the return of the money.  To require us
22 to put it back into TD Bank I believe that --
23        THE COURT:  Who's us, you mean the government?
24        MR. EISENBERGER:  The government, sorry, I
25 apologize.  Legally I believe that there is no basis.

1    The second item is that in this particular case, the
2 money went from chase to HSBC and HSBC to TD Bank.  No one has
3 shown that in fact the HSBC funds, or the money that came from
4 HSBC were the same funds that came out of the Chase Manhattan
5 Bank.  Has been no showing to that, nothing has happened.
6    So Chase Manhattan is now coming in and they are
7 saying, We want you to put it back into TD without any showing
8 that in fact that they would be able to be entitled to those
9 funds at all because it's not the same, it wasn't put in from
10 Chase to TD, it was put in from HSBC and there has been no
11 showing that in fact it might have been other funds.
12    The third item, in this particular case the funds
13 were received for good value; in other words, we were a bona
14 fide seller of goods and we received funds.  This is not a
15 stolen check, this is not a forged check.  That is what 134(5)
16 would apply or have a basis to apply.
17    So therefore there is no basis for Chase Manhattan
18 to, A, come in and require that the funds should go back to TD
19 Bank; there hasn't been any motions by Chase Manhattan.
20    On some theoretical basis they are coming here and
21 asking the court so that they could have time to do something.
22 I believe that they had more than enough time.  We had a six
23 week delay initially and we had another two-week delay and
24 then we had now.  They knew we were coming in.  They did not
25 come in.  They made no motions, they did not move to this

1  court and therefore they should have no standing to come in
2  and make any request from this court as to how the funds
3  should be disbursed.
4      The funds have to be disbursed according to what
5  your Honor determines is the law and the law does not require
6  the funds to be put back into TD Bank if my client chooses and
7  directs it to go into another account.
8      If Chase Manhattan would like to see the return of
9  those funds then they have to move in state court for an
10 attachment, which they would not get because there is no
11 prejudgment attachment in New York, only on very, very harsh
12 circumstances which I don't believe would apply.
13     Under 6200, I think, of the CPLR, that's what
14 governs it -- or 6202 -- they would never qualify.  In effect,
15 that's what they are trying to have this court today, they are
16 trying to circumvent by getting a prejudgment attachment by
17 having your Honor direct the funds to go back into TD Bank and
18 then Chase and TD have already worked out a, Oh, you'll
19 indemnify and we'll hold the funds.
20     A, it would then require us, Max Kahan Inc., to go
21 into court, fight it, incur additional legal fees and costs,
22 which I don't believe that they are required to do so.
23     Thank you, your Honor.
24     MS. HENNIGAN:  Just for the court's information,
25 during the break I was able to ascertain that the account

15

1  7920060725 from which the funds were taken is actually still
2  open at TD Bank in the name of Max Kahan, so in the event the
3  court does direct to us place the funds there, or to the US
4  Marshals Service, that is possible.
5            THE COURT:  All right.
6            I've invited to you comment on this, but a couple of
7  things are clear.  One is, I only have two parties to this
8  lawsuit.  This letter certainly made me think that -- there is
9  no application before me from a party that's in the lawsuit --
10 it made me think about the proper resolution of this case and,
11 you know, I'm not inclined to prolong this discussion any
12 further, let alone unnecessarily, but I can't help but think
13 that there might be a situation, Mr. Eisenberger, in which the
14 discomfort I feel would seem even more justified, and the
15 result that I think is right, which is a direction that the
16 government deposit this money plus accrued interest -- or
17 return it to TD Bank with accrued interest pursuant to an
18 order that says put it back in the account from which it was
19 seized is correct.
20            , suppose there were other creditors of Mr. Kahan --
21 what is the name of the company?
22            MR. EISENBERGER:  Max Kahan Inc.
23            THE COURT:  Suppose there were other creditors that
24 sought relief to execute judgments or whatever against that
25 account, if the government swept in, got the order like the

16

1  one I issued, I think to say that once the government walks
2  away from this lawsuit he has a right to direct the
3  disposition of the assets because they were seized from that
4  account would clearly be wrong.
5         MR. EISENBERGER:  May I comment on that?
6         THE COURT:  Yes.
7         MR. EISENBERGER:  Based on the scenario that your
8  Honor has set forth, it would have required the creditors --
9  they would have had a requirement to come into the court and
10 ask by motion for either the monies to be returned or should
11 be held, should not be disbursed to Max Kahan or to whoever
12 the person is entitled to it, but without that direction --
13        THE COURT:  Why does that make sense?
14        MR. EISENBERGER:  Because this court would not have
15 any basis to assume that there is any restraint or that there
16 are creditors out there seeking the funds, in any way that the
17 funds are being dissipated or gotten rid of.
18        All I am asking is, I'm reserving my client's right
19 to deposit his assets or seek to put it in any account he
20 chooses.
21        The government is required to issue a check.  I'm
22 asking physically for that check to be issued with accrued
23 interest.  How my client and what he does with that, that will
24 be up to creditors or the bank to go in and seek whatever
25 relief.

1   Your Honor can only direct them to return the funds,
2   and that return of the funds should be in the form of a check
3   and not, if we do not agree, for it to go back to TD Bank.  I
4   don't believe there is a basis that your Honor can say where
5   it should go back.  If it was there, yes, but it's not.  It
6   was taken out.
7        THE COURT:  We're repeating ourselves.
8        One thing I didn't mention that I should have is, I
9   don't mean to suggest that everything you say isn't right, you
10  might be right, I assume it's right.  You're obviously a very
11  good lawyer, but I regard the question as to which court, if
12  any, those arguments ought to be made, and it just strikes me
13  as logical that should there be any attempt at recourse
14  against these funds once they are back in the TD Bank, then
15  you'll make those arguments to presumably the state court
16  where an order of attachment is sought and/or obtained.
17       Here's what I'm going to do:  I disagree with your
18  argument.  The government is going to dismiss the complaint.
19  To the extent you're going to dismiss the complaint, it
20  doesn't have to be by stipulation, you don't have to agree to
21  this --
22       MR. EISENBERGER:  I've agreed to it, Judge.
23       THE COURT:  But I'm going to tinker with where the
24  money goes.  I'm going to tinker with the stipulation and have
25  it read, instead of directed to return the defendant property

18

1  with accrued interest, if any, to Max Kahan Inc., to read the
2  TD Bank for deposit in account number 7920060725 held in the
3  name of Max Kahan, Inc.
4         MR. EISENBERGER:  May I note my exception?
5         THE COURT:  Not it if's a stipulation you can't.  If
6  you do this by stipulation you agree to it.
7         MR. EISENBERGER:  If I don't?
8         THE COURT:  You can except to it and I will order
9  it.
10        MR. EISENBERGER:  I except the stipulation as your
11 Honor modified it.  You can order it.  In other words  --
12        THE COURT:  There is no sense in you signing it and
13 saying --
14        MR. EISENBERGER:  I signed at this time way it was
15 written.  I didn't sign it the way your Honor modified it.  I
16 will undo my signature and just take an exception to it.
17        THE COURT:  We'll just throw this out because this
18 is done over objection.  I understand that.
19        MR. EISENBERGER:  Okay.
20        THE COURT:  You want to preserve your rights, that's
21 fine.
22        I will close the case on the government's motion to
23 dismiss the in rem complaint, correct?
24        MS. HENNIGAN:  Yes, your Honor.
25        THE COURT:  As relief, I'm going to direct the

1  government to return the property with accrued interest to the
2  bank account the number of which we just placed on the record.
3  You have your exception.
4         MR. EISENBERGER:  Yes.
5         MS. HENNIGAN:  As part of the order, could you also
6  vacate the original seizure warrant?  I know that you're doing
7  that in effect by saying that we give the money bank.
8         MR. EISENBERGER:  We believe it's necessary
9  otherwise the Treasury won't release the funds.
10        THE COURT:  The seizure warrant is hereby vacated.
11        MR. EISENBERGER:  Thank you, your Honor.
12        MS. HENNIGAN:  Thank you.
13        THE COURT:  Okay?
14        MS. HENNIGAN:  Thank you.
15        THE COURT:  Good luck.
16             *********

Burton H. Sulzer - OCR, CM, CRR