UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TD BANK, N.A.

           Plaintiff,

  v.

JP MORGAN CHASE BANK, N.A.,
and MAX KAHAN, INC.

           Defendants.

Civ. No. 10-CV-2843 (JG)

---

**PLAINTIFF TD BANK, N.A.'S MEMORANDUM IN OPPOSITION
TO DEFENDANT MAX KAHAN, INC.'S APPLICATION
<u>FOR AN ORDER TO SHOW CAUSE</u>**

**I.    INTRODUCTION**

On June 21, 2010, Plaintiff TD Bank, N.A. ("TD Bank") initiated this interpleader action in order to extricate itself from any further involvement in the ongoing dispute between interpleader defendants Max Kahan, Inc. ("Max Kahan") and JP Morgan Chase Bank, N.A. ("Chase") (collectively, "Defendants") over which party is entitled to the sum of $2,089,000.00 held by TD Bank (the "Funds"). It is undisputed that Max Kahan claims it is the rightful owner of the Funds, while Chase claims the Funds were unlawfully transferred from one of its customer's accounts and must be returned to Chase. It is further undisputed that each Defendant has demanded that TD Bank turn the Funds over to it. TD Bank claims no right to or interest in the Funds.

The Funds were previously the subject of a civil forfeiture action brought by the United States of America in this Court (the "Forfeiture Action"). The government voluntarily

dismissed that action in April 2010, and the Court directed that the Funds be returned to Max Kahan's account at TD Bank. At a hearing on the government's motion to dismiss, the Court acknowledged that Max Kahan and Chase had competing claims to the Funds and that all parties anticipated that litigation would ultimately be needed to resolve the competing claims after the Funds were returned.

Notwithstanding the competing demands upon TD Bank for the Funds, Max Kahan now asks this Court to dismiss this interpleader action on the grounds that there is no set of facts under which Chase can demonstrate an entitlement to the Funds. Essentially, Max Kahan asks the Court to resolve the merits of the competing claims to the Funds in its favor. TD Bank takes no position on the merits of the dispute between Max Kahan and Chase.

As a matter of law, the merits of Defendants' competing demands are not before this Court on Max Kahan's motion under Rule 12(b)(6). Rather, the Court's sole inquiry is whether TD Bank has pled facts sufficient to demonstrate a right to the statutory interpleader remedy. This requirement is clearly met. The Complaint alleges that Chase and Max Kahan both claim an adverse entitlement to the funds, and both intended to resort to litigation if TD Bank did not accede to their respective demands. Therefore, Max Kahan's motion should be denied, and the Court should proceed to permit TD Bank to interplead the Funds and dismiss it from the case.

**II.   STATEMENT OF FACTS**

Max Kahan maintains a business deposit account with TD Bank. Interpleader Complaint ¶ 6. In October 2009, Chase informed TD Bank that the Funds in the account represented monies unlawfully transferred from a Chase customer, and demanded that TD Bank return the Funds to Chase. Id. ¶ 7. Before TD Bank responded to Chase's demand, however, the

United States of America initiated a forfeiture and condemnation proceeding against the Funds on October 28, 2009.  Id. ¶ 8, Ex. A (Forfeiture Complaint).  In connection with the initiation of the Forfeiture Action, the United States seized the Funds.  Id. ¶ 8.

In its Forfeiture Complaint, the United States expanded on the allegations of Chase's prior demand to TD Bank.  Specifically, the United States alleged that the Funds originated in an account held at Chase in the name of Xiuqing Xao.  Forfeiture Complaint ¶¶ 7-8.  The government further alleged that in September 2009, a person purporting to be Mr. Xao fraudulently procured transfers of the Funds to an account at HSBC Bank in Hong Kong.  Id. ¶¶ 8-12.  The Funds were then transferred from HSBC Bank in Hong Kong to the Account at TD Bank.  Id. ¶¶ 13-16.  Chase subsequently discovered that Mr. Xao had not actually ordered the original transfers from his Chase account.  Id. ¶¶ 17-18.

On or about April 15, 2010 – prior to the initiation of discovery in the Forfeiture Action – the United States decided to voluntarily dismiss the action.  Interpleader Complaint ¶ 11.  A hearing was held on the United States' motion for dismissal on April 28, 2010.  Id.; see also Exhibit 1 (Apr. 28, 2010 Hearing Transcript).  Prior to that hearing, Chase wrote to the Court and reiterated its claim to the funds.  Ex. 1 at 2.  As a result, the Court permitted Chase to appear and participate in the hearing.  Id.

During the April 28, 2010 hearing in the Forfeiture Action, the parties addressed where and how the Funds would be returned to Max Kahan upon dismissal.  Interpleader Complaint ¶ 12.  Max Kahan claimed a right to dictate the manner in which the Funds were returned.  Id.  However, the Court – mindful that Chase still claimed an entitlement to these Funds – ordered that the Funds be returned by the United States Secret Service to the Account at TD Bank, in order to restore the pre-seizure status quo.  Id.; see also Interpleader Complaint, Ex.

B (Apr. 29, 2010 Order); Exhibit 1 (Trans. of April 28, 1010 Hearing)[1]. In reaching this decision, the Court acknowledged (1) that the adverse claims of Max Kahan and Chase were likely to result in litigation; and (2) that litigation was likely to involve TD Bank. See Ex. 1 at 6, 8, 16, 17. Moreover, the Court's rationale for returning the Funds to the Account at TD Bank was so that both Max Kahan and Chase would be able to fully pursue any claim that each had regarding the Funds in a subsequent action. Id. As the Court explained:

> All right. Since we're essentially undoing [the Forfeiture Action] and since potentially there is a nonparty [Chase] whose interests [are] impinged or affected adversely by our doing it in this way, why shouldn't I require you to go back and you and TD Bank fight whatever battle is going to be fought with JP Morgan Chase over whether these funds go to Kahan or back up the line to Chase?
>
> * * *
>
> Why wouldn't that be the fair outcome here, whatever rights they have or don't have can be litigated hopefully in some other court?[2]

Id. at 6.

With the pending return of the Funds, both Max Kahan and Chase refocused their competing claims to the Funds on TD Bank. Thus, on April 29, 2010, Max Kahan wrote to TD Bank and demanded that TD Bank "immediately turn over the [F]unds" to Max Kahan once received from the U.S. Secret Service. Interpleader Complaint, Ex. C at 1-2. Max Kahan further threatened that it "would seek to enforce all available legal, equitable and regulatory remedies, including the imposition of punitive damages" if TD Bank did not comply. Id. at 2. For its part,

---

[1] The transcript of this Court's April 10, 2008 hearing in United States v. All Funds on Deposit in TD Bank Account No. 792006075 is properly before the Court as a public record subject to judicial notice. See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

[2] From the transcript, it appears that the Court contemplated that Max Kahan and Chase would resolve their competing claims to the funds in state court. However, in order to avoid being drawn into that dispute (in which it has no interest), TD Bank instead filed this action pursuant to 28 U.S.C. § 1335.

-4-

Chase similarly wrote to TD Bank on May 3, 2010. Interpleader Complaint, Ex. D. Once again, Chase claimed that the Funds were fraudulently transferred from Mr. Xao's account and renewed its demand that TD Bank freeze and remit the Funds to Chase. Id. at 1-2. In return, Chase offered to indemnify TD Bank from future litigation involving the Funds. Id. at 2.

Based on Max Kahan and Chase's competing claims to the Funds as well as the history of this dispute, TD Bank reasonably anticipated that litigation would ensue when the Funds were returned to it. Interpleader Complaint ¶¶ 16, 19. Accordingly, when the Funds were returned, TD Bank promptly initiated this Interpleader Action on June 21, 2010. TD Bank claims no title or interest in the Funds, and merely seeks to remove the risk of multiple liability or multiple lawsuits due to the existence of the ongoing dispute between Max Kahan and Chase over the Funds. Id. ¶¶ 22-23

### III. ARGUMENT

#### A. Standard of Review

As the Court has acknowledged, the issue raised by Max Kahan's Order to Show Cause is whether the Interpleader Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See June 2, 2010 Order at 1. "Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual allegations of the complaint." Corbett v. eHome Credit Corp., No. 10-CV-26, 2010 U.S. Dist. LEXIS 27287, at *4 (E.D.N.Y. March 22, 2010) (Gleeson, J.). In evaluating a motion to dismiss, the Court will "construe[] the Complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 57 (2d Cir. 2008).

Statutory interpleader under 28 U.S.C. § 2361 is a two-step process. See Payless Shoesource, Inc. v. Avalon Funding Corp., 666 F. Supp. 2d 256, 360-61 (E.D.N.Y 2009). In the

first step, the Court determines whether the plaintiff meets the statutory requirements for interpleader. Id. If the requirements are met, the plaintiff is discharged and the Court proceeds to resolving the competing claims. Id. Thus, the merits of Chase and Max Kahan's competing claims are not before the Court at this time. The sole issue is whether TD Bank has pled the required elements of its interpleader claim.

The elements of TD Bank's interpleader claim are set forth in 28 U.S.C. § 1335, which the Supreme Court and Second Circuit have instructed is remedial and should be liberally construed. See Reserve Int'l Liquidity Fund v. Caxon Int'l, Ltd., et. al., No. 09-Civ. 9021, 2009 U.S. Dist. LEXIS 42216, at *22 (S.D.N.Y. Apr. 28, 2010) (citations omitted). The statute provides that interpleader is proper where the plaintiff alleges that (1) it is in possession of property in excess of $500 [subject to the competing claims of diverse citizens]; (2) the plaintiff has a "real and reasonable fear of double liability or vexatious, conflicting claims against the single fund, *regardless of the merits of the competing claims*"; and (3) the plaintiff has tendered or offered to tender the property at issue to the Court. Payless Shoesource, 666 F. Supp. 2d at 360 (emphasis added) (citations omitted); see also 28 U.S.C. § 1335.

In this case, the first and third elements are obviously satisfied and not contested by Max Kahan. As demonstrated below, the second element is also satisfied, as the allegations of the Complaint make clear that TD Bank reasonably fears being subjected to multiple lawsuits and liabilities based on Max Kahan and Chase's conflicting claims to the Funds.

**B.     The Complaint Demonstrates that TD Bank Has a Real and Reasonable Fear of Multiple Liability and Multiple Lawsuits**

The statutory remedy of interpleader exists precisely so that a disinterested stakeholder, like TD Bank, can extricate itself from a dispute between two adverse claimants, like Max Kahan and Chase. The law is well-settled that TD Bank is not required to evaluate the

-6-

merits of these competing claims prior to initiating an interpleader action. John Hancock Mut. Life Ins. Co. v. Kraft, 200 F.2d 952, 954 (2d Cir. 1953) ("In an interpleader action, the jurisdiction of the court is not dependent on the merits of the claims of the defendants.") As the Southern District of New York recently reiterated:

> The availability of the interpleader remedy, however, is not dependent on the merits of the claims asserted against the stakeholder. *The mere threat of future litigation is a sufficient basis for interpleader.* Moreover, a party is not required to evaluate the merits of conflicting claims at its peril; rather, it need only have a good faith concern about duplicitous litigation and multiple liability if it responds to the requests of certain claimants and not to others.

Bank of New York v. First Millennium, Inc., No. 06-Civ-13388, 2008 U.S. Dist. LEXIS 26554, at *18 (S.D.N.Y. Mar. 31, 2008) (emphasis added) (quoting Sotheby's, Inc. v. Garcia, 802 F. Supp. 1058, 1065 (S.D.N.Y. 1992); see also Rubbinbaum, L.L.P. v. Related Corporate Partners V, L.P., 154 F. Supp. 2d 481, 486 (S.D.N.Y. 2001) ("The mere threat of future litigation is sufficient for a plaintiff to invoke the statutory interpleader remedy."); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1704 (3d ed. 2001) ("[I]t is immaterial whether the stakeholder believes that all the claims against the fund are meritorious."). Thus, it is the threat of litigation or liability[3] – not the merits of the underlying claims – that provides the basis for interpleader.

For example, in First Millennium, supra, The Bank of New York served as a trustee for a trust formed out of the securitization of NextBank consumer credit card accounts

---

[3] A threat of litigation exists even if all defendants have not directly threatened litigation against the stakeholder, as Section 1335 expressly includes those who "may claim" the property in the future (and resort to litigation in the process). See 28 U.S.C. § 1335; Avant Petroleum, Inc. v. Banque Paribas, 853 F.2d 140, 143 (2d Cir. 1988) ("[t]he inclusion in § 1335 of the phrase 'or may claim' is . . . designed to allow the stakeholder to invoke the interpleader form of action against a person who has not yet actually asserted his claim or whose claim has not been liquidated.")

which was funded by card receivables.  2008 U.S. Dist. LEXIS, at *3-4.  When NextBank subsequently failed, the FDIC was appointed as its receiver, and demanded that The Bank of New York pay certain receivables to it.  Id. at *4-5.  Some noteholders, however, disapproved of elements of the FDIC's plan and demanded that The Bank of New York sue on its behalf.  Id. at *7.  In response, the FDIC similarly threatened to sue The Bank of New York if it complied with the noteholders' request.  Id.  The U.S. District Court for the Southern District of New York held that the threat of future litigation was sufficient to justify The Bank of New York's decision to bring an interpleader action:

> The specific allegations and documents in the pleadings make clear that BNY faced adverse claims and the threat of multiple liability relating to the interpleader assets.

Id. at *18.  In so holding, the Court disregarded the FDIC's argument that The Bank of New York was obligated to ignore the noteholders' demands "due to the strength of the FDIC's claims to the funds."  Id.  In other words, The Bank of New York was not required to endure a lawsuit from the noteholders simply because the FDIC asserted that it had a superior claim.

Here, the allegations of the Complaint and related documents make clear that TD Bank was similarly threatened with litigation and reasonably feared multiple lawsuits arising out of the competing claims of Max Kahan and Chase.  As stated at the outset, it is undisputed that Max Kahan and Chase both claim entitlement to the Funds and that each has demanded that TD Bank turn the funds over to it.  See Fidelity Brokerage Servs., LLC v. Bank of China, 192 F. Supp. 2d 173, 178 (S.D.N.Y 2002) (affirming initiation of interpleader based on conflicting claims and inconsistent orders from multiple parties, as evidenced by correspondence).  In support of their competing claims, Max Kahan explicitly threatened to sue TD Bank if it did not comply with Max Kahan's demands.  Interpleader Complaint, Ex. C.  Chase similarly demanded that TD Bank freeze and remit the Funds to Chase in exchange for indemnity – raising the

question of TD Bank's obligations to Chase under the New York banking laws.[4]  See also Ex. 1 at 5 (noting Chase's "reference here to some state law bank to bank obligation on the part of TD Bank because of the fraud committed on JPMorgan [sic] Chase.")  Thus, although Chase did not threaten to sue TD Bank directly, TD Bank reasonably believed that Chase might sue if TD Bank did not comply with Chase's demands.  Accordingly, at the time the Funds were returned, TD Bank had to make a decision regarding whether to pay the Funds to Max Kahan or Chase, which required it to resolve the merits of their competing claims on a limited record.  Regardless of the decision, TD Bank reasonably feared that if it gave the Funds to Chase, it faced a lawsuit from Max Kahan; and if it gave the funds to Max Kahan, it faced a lawsuit from Chase.  That is all the interpleader statute requires.

In sum, the allegations of the Complaint establish that TD Bank reasonably feared that it would face multiple liabilities or multiple lawsuits if it continued to hold the Funds or acceded to either Defendant's demand.  Therefore, the requirements of 28 U.S.C. § 1335 are met, and Max Kahan's motion must be denied.

### C. TD Bank Acted In Good Faith In Bringing This Action

It should be undisputed that TD Bank has acted in good faith in bringing this interpleader action.  Max Kahan argues that "there is no good faith basis" for this action because (according to Max Kahan) it would win any litigation regarding its competing claims with Chase.  See Mem. in Support at 5-7.  Essentially, Max Kahan seeks a resolution of the merits of Chase's claim.  In making this argument, Max Kahan fails to recognize that the merits of the Defendants' competing claims are not at issue here – the only issue is what TD Bank, as a

---

[4] In prior correspondence to the Court, Chase asserted that TD Bank "must" comply with its demand pursuant to Section 134(5) of the New York Banking Law. See Weinstein Decl., Ex.B.

disinterested stakeholder, reasonably fears as a result of the Defendants' claims to the Funds. See II.B. supra.

TD Bank has no interest in whether the Funds are ultimately distributed to Max Kahan or Chase, and therefore takes no position as to whether Max Kahan or Chase ultimately has a superior claim to the Funds. TD Bank merely seeks to extricate itself from having to act as the arbiter of this dispute while potentially subjecting itself to lawsuits from Max Kahan, Chase, or both in the process. In other words, the issue is not whether TD Bank could successfully defend itself if it decided to give the Funds to either Defendant – the issue is that under the interpleader statute, TD Bank is not required to place itself in the middle of that litigation in the first place. As such, the allegations of the Complaint and record of the Defendants' competing claims make clear that TD Bank has acted in good faith.

None of the cases cited by Max Kahan support its position that dismissal is warranted in the circumstances presented here – where TD Bank indisputably faces competing demands and threats of litigation regarding the Funds. To the contrary, the cases provide further examples of valid interpleader claims. For example, in Rubinbaum LLP v. Related Corporate Partners V, L.P., 154 F. Supp. 2d. 481, 486-88 (S.D.N.Y. 2001), the district court held that the plaintiff was entitled to resort to interpleader even though the defendants had not asserted any claim against the relevant property prior to the action. Similarly, in Viewhaven, Inc., v. Marcello Danon, No. 85-9603, 1986 U.S. Dist. LEXIS 24279, at **4-10 (S.D.N.Y. 1986), the district court upheld the institution of an interpleader even though one defendant had an arbitration award requiring the plaintiff to pay the funds in dispute to him. The court found that interpleader was justified because a third party claimed an entitlement to the same funds and had threatened to sue the plaintiff. Id. at **8-10; see also Truck-A-Tune, Inc. v. Thomas C. Re., 23 F.3d 60 (2d Cir.

1993) (adverse claimants settled dispute regarding the relevant property after interpleader was initiated); Stuyvesant Insurance Co. v. Dean Construction Co., 254 F. Supp. 102 (S.D.N.Y. 1966) (interpleader justified where two parties each claimed an entitlement to the proceeds of a bond and related collateral).

The sole case cited by Max Kahan in which a court found an interpleader complaint was "utterly baseless" is John Hancock Mutual Life Ins. Co. v. Beardsley, 216 F.2d 457 (7th Cir. 1954). In that case, John Hancock attempted to interplead the proceeds of a $1,000 life insurance policy on the grounds that a dispute existed as to whether the named beneficiary or former named beneficiary was entitled to the funds. Id. at 458. In the subsequent litigation, however, the former named beneficiary did not appear or assert any claim. Id. at 459. More importantly, the former beneficiary had previously acknowledged in a letter that she did not have "any legal right" to the policy proceeds. Id. at 460. That case has no applicability here, where both Max Kahan and Chase continue to demand that TD Bank turnover the Funds to them, and have threatened to resort to litigation. To say the least, Max Kahan has clearly failed to provide any support for its assertion that TD Bank has acted in bad faith in bringing this action.

## IV. CONCLUSION

For the foregoing reasons, TD Bank respectfully requests that the Court deny Max Kahan's request to dismiss the Complaint.

        /s/ Angelo A. Stio III
Angelo A. Stio, III, Esq. (#AS 7880)
PEPPER HAMILTON LLP
The New York Times Building
37th Floor
620 Eighth Avenue
New York, New York 10018-1405


Stephen G. Harvey, Esq.
Frank H. Griffin, IV, Esq.
PEPPER HAMILTON LLP
Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

*Attorneys for Plaintiff TD Bank, N.A.*

July 23, 2010

-13-

**CERTIFICATE OF SERVICE**

      I, Frank H. Griffin, IV, hereby certify that on this 23rd day of July 2010, copies of the foregoing Memorandum in Opposition to Defendant Max Kahan, Inc.'s Application for an Order to Show Cause was served on all counsel of record by filing the document on the Court's CM/ECF system, where it is available for viewing and downloading.

                                                          /s/ Frank H. Griffin, IV_____
                                                         Frank H. Griffin, IV