UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :
T.D. BANK, N.A.,                                                :
                                                                :   ONLINE PUBLICATION ONLY
                                                                :
                                                                :   MEMORANDUM DECISION
                        Plaintiff,                              :
                                                                :
        -against-                                               :
                                                                :   10-CV-2843 (JG) (ARL)
JP MORGAN CHASE BANK, N.A.                                      :
and MAX KAHAN, INC.,                                            :
                                                                :
                        Defendants.                             :
----------------------------------------------------------------X

        PEPPER HAMILTON LLP
                620 Eighth Avenue, 37th Floor
                New York, New York 10018
        By:     Angelo Stio, III
                Stephen G. Harvey
                Frank H. Griffin, IV
                *Attorneys for Plaintiff*

        LEVI LUBARSKY & FEIGENBAUM LLP
                1185 Avenue of the Americas, 17th Floor
                New York, New York 10036
        By:     Andrea Likwornik Weiss
                Andre Castaybert
                *Attorneys for Defendant JP Morgan Chase, N.A.*

        THE LAW OFFICE OF SHELDON EISENBERGER
                30 Broad Street
                New York, New York 10004
        By:     Sheldon Eisenberger
                *Attorneys for Defendant Max Kahan, Inc.*

JOHN GLEESON, United States District Judge:

        TD Bank filed this interpleader action asserting that it faces mutually exclusive

demands to a sum of money exceeding $2 million in one of the bank's accounts. Max Kahan,

Inc., a claimant to the funds, contended that an interpleader is inappropriate and moved to

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). After oral argument on August 4, 2010, I denied the motion to dismiss and granted TD Bank's request that it be permitted to deposit the disputed funds with the Clerk of Court. I promised that an opinion would follow explaining the reasons for those decisions; this memorandum decision is that opinion.

BACKGROUND

In June 2006, Xiuqing Yao opened an account at JP Morgan Chase ("Chase"). As proof of identity, he provided a Chinese passport and a Chinese National Identification Card bearing his name and photograph. Yao's business partner, Wenru Yang, was given a power of attorney to conduct transactions on the account. The Chase account manager for Yao's account was Julia Fan, whose office is in Manhattan. From June 2006 until the events giving rise to this case, Yao and Yang always contacted Fan when they wanted to transfer money from the account.

On September 14, 2009, a rogue pretending to be Yao walked into a Chase branch in Flushing, Queens. To perpetrate his fraud, the imposter presented a fake Chinese passport with Yao's name and the same passport number as Yao's passport. He directed Chase to transfer $1.9 million from Yao's account to an HSBC account in Hong Kong in the name of Golden On Star Limited. The next day, the villain called the Flushing branch again to ask why the money had not been transferred. A Chase employee replied that the bank would need a copy of Yao's National Identification Card before the transfer could be completed. The charlatan dutifully complied, faxing a fake National Identification Card with Yao's name and the correct identification number. Deceived, Chase sent the $1.9 million to Golden On Star's account on

September 16, 2009. On September 18, 2009, the swindler again entered the Flushing branch and procured the transfer of another $190,000 to Golden On Star's account.

Max Kahan, Inc. ("Kahan") is a gold dealer based on 47th Street in Manhattan. According to Kahan, it was introduced to Golden On Star in September 2009 by a longstanding customer. Kahan delivered 20 kilos of gold bars, 1,310.05 ounces of fine gold bars, and 100.875 ounces of platinum "to an individual who represented that he was authorized to accept the merchandise on behalf of Golden On Star Limited." Weinstein Decl. ¶ 8. In exchange for the precious metals, $2.089 million was transferred from Golden On Star's HSBC account to Kahan's business deposit account at TD Bank. Those transfers occurred between September 18, 2009 and September 21, 2009. Kahan asserts that it had no reason to doubt the money's provenance.

Chase began to suspect a fraud on September 23, 2009, when Fan noticed the activity in the account. Fan knew that Yao, who was having difficulty securing a visa, was not in the United States. She contacted Yao, who claimed to know nothing about the transactions. But by then, it was too late to recall the money. After learning of the subsequent transfers to Kahan's account, Chase contacted TD Bank, told TD Bank that the money was derived from a fraud on Chase, and demanded that TD Bank pay the $2.089 million to Chase.

Upon learning of the fraud, the United States Attorney for the Eastern District of New York commenced an *in rem* action against the money in Kahan's account. That case was assigned to me, and on the government's application I issued a preliminary order of forfeiture. *See United States v. TD Bank Account Number 7920060725*, No. 09-CV-4663 (E.D.N.Y. Oct. 28, 2009) (Summons and Warrant for Arrest of Articles in Rem). In compliance with my

3

order, the money was paid to the United States Secret Service pending the outcome of the *in rem* action. Kahan filed an answer and counterclaim, asserting that it was the lawful owner of the funds. Chase did not file a claim and never formally appeared in the forfeiture action.

After further investigation, the government decided to abandon the forfeiture action. I granted the government's motion to dismiss on April 28, 2010. Prior to the dismissal, the parties disputed where the money should go once the seizure warrant was vacated. Kahan wanted the government to write a check to Kahan so that Kahan could dispose of the funds as it wished. The government argued that the money should instead be wired back to Kahan's TD Bank account. Though Chase was not a party, it wrote a letter to the court supporting the government's view. I agreed with the government, and ordered the Secret Service to restore the *status quo ante* by returning the money to the TD Bank account.

After the forfeiture action was dismissed, Kahan wrote to TD Bank demanding that TD Bank turn over the funds once they were returned. A few days later, Chase wrote to TD Bank reiterating its request that the money be remitted to Chase instead. Shortly after the Secret Service wired the funds back to Kahan's account, TD Bank commenced this interpleader action, naming Kahan and Chase as adverse claimants to the $2.089 million.[1] The complaint asserts that TD Bank "cannot determine which of the Interpleader Defendants possesses the highest and best claim to the Funds under the law and, thus, cannot determine the person or persons to whom it should pay the Funds or any portion thereof." Compl. ¶ 1. Kahan now moves for an order dismissing the action and directing TD Bank to release the money to Kahan.

---

[1] Each of the parties is a citizen of a different state: TD Bank of Delaware, Chase of Ohio, and Kahan of New York. This Court has subject-matter jurisdiction over the case under the general diversity statute, 28 U.S.C. § 1332, and also pursuant to the interpleader statute, *id.* § 1335.

DISCUSSION

This case involves property law's eternal triangle of owner, crook, and subsequent recipient.[2] The unidentified crook defrauded Chase and gave the proceeds to Kahan in exchange for gold and platinum. The crook is nowhere to be found, leaving two parties, Chase and Kahan, as possible candidates to bear the loss. The usual principle of risk allocation is *nemo dat quod non habet* – no-one can give what he or she does not have – and the thief has no power to pass title. Unless the subsequent recipient of property can invoke some exception to that maxim, the initial victim of a theft prevails and the loss falls on the recipient of the property. *See, e.g., Mitchell v. Hawley*, 83 U.S. (16 Wall.) 544, 550 (1872) ("No one in general can sell personal property and convey a valid title to it unless he is the owner or lawfully represents the owner. *Nemo dat quod non habet*."); *cf.* Jeffrey Hackney, Book Review, 117 Law Quarterly Review 150, 153 (2001) ("are we wholly sure that Nemo was not a Roman pawnbroker?").

The law provides a broad exception to the rule of *nemo dat quod non habet* in the case of money, a commodity whose ready transferability is essential to keep the wheels of commerce well greased. Where the property is money, even an outright thief has the power to pass title to a good faith holder for value. *See, e.g., Newton v. Porter*, 69 N.Y. 133, 137 (1877). Accordingly, Kahan will be entitled to the keep the money, free of any claim by Chase, if it can show that it acted in good faith, that it had no notice that the funds were procured by fraud, and that it gave value in exchange for the money.

---

[2] "Here we meet the Eternal Triangle of the Law: an honest man (A), a rascal (B), and another honest man (C). Typically, the rascal imposes upon both of them … and leaves to the law the problem of deciding which of them shall bear the loss." A. James Casner & W. Barton Leach, Cases and Text on Property 179 (1950).

TD Bank seeks to extricate itself from the controversy between Chase and Kahan by means of an interpleader action. In interpleader parlance, TD Bank is the stakeholder. It claims no interest in the funds, and seeks to pay the money into court so it can leave Chase and Kahan to litigate Kahan's purported status as a good faith holder. If permitted to proceed, an interpleader action will protect TD Bank from the risk of paying the money to the wrong claimant, and will relieve TD Bank of the burden of litigating a dispute in which it has no stake. Those are exactly the purposes of the interpleader device. *See, e.g., Washington Elec. Coop. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) ("Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund.").

An interpleader action is generally conducted in two stages: during the first stage, the court determines whether interpleader is appropriate and the stakeholder is entitled to bring the action; during the second, the Court determines the rights of the competing claimants to the fund. *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988). The question on this motion is whether, at the first stage, TD Bank has sufficiently pled facts that, accepted as true, show that an interpleader action is the proper procedural means for resolving the dispute between Chase and Kahan.

The interpleader statute requires "[t]wo or more adverse claimants" who "are claiming or may claim to be entitled" to the contested property. 28 U.S.C. § 1335(a)(1). In determining whether an interpleader action is appropriate, a court must assess whether the stakeholder "legitimately fear[s] multiple [liability] directed against a single fund, regardless of the merits of the competing claims." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*,

No. 98 Civ. 1756, 2001 WL 11070, at *5 (S.D.N.Y. Jan. 4, 2001); *Washington Elec.*, 985 F.2d at 679 ("[W]hat triggers interpleader is a real and reasonable fear of double liability or vexatious, conflicting claims." (quotation marks omitted)).

Arguing that the case should be dismissed, Kahan contends that there is no conceivable basis for Chase's claim that Kahan might be anything other than a good faith seller of gold and platinum. Kahan points out that "an asserted adverse claim may be so wanting in substance that an interpleader may not be justified." *New York Life Ins. Co. v. Lee*, 232 F.2d 811, 813 (9th Cir. 1956). But dismissal of an interpleader complaint on that ground is proper only in exceptional circumstances, where "the assertion that there are two or more adverse claimants is utterly baseless and made without good faith." *Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F. Supp. 2d 481, 486 (S.D.N.Y. 2001).

In this case, TD Bank's fear of double liability is genuine, as illustrated by the correspondence from Chase and Kahan that TD Bank attached to the interpleader complaint. *See* Compl. Ex. C & D. Chase asserts that it is the victim of a fraud and that it is entitled to follow its money into Kahan's account. Kahan claims that it received the money in good faith and that it gave value for the money. Faced with these competing claims, neither of which can accurately be described as "utterly baseless," TD Bank was not required to accept Kahan's word. Nor was TD Bank required to review Chase's letter and decide whether, if the letter was converted into a complaint, it would state a claim upon which relief might be granted by a court. *See John Hancock Mutual Life Ins. Co. v. Kraft*, 200 F.2d 952, 954 (2d Cir. 1953) ("The stakeholder should not be obliged at its peril to determine which of two claimants has the better claim."). Rather, the interpleader device allows TD Bank to commence an interpleader action,

7

pay the money into court, and leave the determination to the court at the second stage of the action.

To the extent Kahan believes that Chase's claim to the funds should be rejected at the pleadings stage, the proper course is for Kahan to answer the interpleader complaint, assert its claim to the funds, proceed to the second stage of the case, and file a motion for judgment on the pleadings under Rule 12(c). The merits of Chase's claim will then be before the court. At that juncture, it will be proper to decide whether Chase's claim should be dismissed, or whether, instead, Chase is entitled to discovery concerning the circumstances of Kahan's transaction with Golden On Star.

In its reply papers, Kahan asserts three additional arguments against permitting the interpleader to proceed to the second stage. Though arguments raised for the first time in a moving party's reply papers may be considered waived, I exercise my discretion to consider the new arguments because the other parties would suffer no unfair prejudice from my doing so. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005).

The first supplemental argument against interpleader is that Chase's claim must inevitably fail under the doctrine of collateral estoppel, also known as issue preclusion. Kahan contends that the order dismissing the forfeiture action precludes Chase from taking "a second bite at the apple." Reply Br. 4. As noted above, the question at this stage is only whether issue preclusion renders Chase's claim "utterly baseless," but in any event it is abundantly clear that the doctrine will not assist Kahan. Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior

judgment." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).[3] The doctrine has no application here because no issues were resolved in the forfeiture action. That case ended in a dismissal on the government's motion, before the court had the opportunity to render a decision on any issue that bears on this case.

Though Kahan invokes the doctrine of issue preclusion, claim preclusion seems like a better fit. Unlike issue preclusion, claim preclusion may operate to bar a party's claim even where the prior court did not render any decision as to the merits of that claim. *See, e.g., Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 345 (2d Cir. 1995) (voluntary dismissal with prejudice has claim-preclusive effect). But even assuming for the moment that the forfeiture action was dismissed with prejudice,[4] the assertion of claim preclusion against Chase seems likely to fail because Chase was not a party to the forfeiture action. Indeed, Kahan vigorously – and properly – disputed Chase's standing to make submissions to the court in that action. *See TD Bank Account Number 7920060725*, No. 09-CV-4663 (E.D.N.Y. Apr. 27, 2010)

---

[3] It appears that the preclusion rules developed by the federal courts, rather than the New York's preclusion rules, govern the effect of the forfeiture action's dismissal. In its complaint, the government invoked federal law as the basis for proceeding against the funds in the account. *See TD Bank Account Number 7920060725*, No. 09-CV-4663 (E.D.N.Y. Oct. 28, 2009) (Complaint), at ¶¶ 3-4, 19-20. Where federal law governs the initial action, federal courts apply federal preclusion rules when deciding the preclusive effect of that action on a later action. *Taylor v. Sturgell,* 128 S.Ct. 2161, 2171 (2008)); *cf. Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508-509 (2001) (the claim-preclusive effect of a federal district court's determination in a diversity action is determined by federal common law, which in turn incorporates the preclusion rules of the state where the district court sat). In any event, there is no distinction between the federal preclusion rules and New York's equivalents that would make a difference to the outcome of this motion.

[4] The order dismissing the forfeiture action on the plaintiff's motion was silent as to whether the dismissal was with or without prejudice. In normal circumstances, the result of such silence is that the dismissal is without prejudice. *See* Fed. R. Civ. P. 41(a)(2) ("Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."). The analysis is complicated by the fact that, when I granted the government's motion to dismiss, I stated on the record that whether the dismissal was with or without prejudice was a question that could be resolved, if necessary, in subsequent litigation. For the reasons stated in the text, I do not find it necessary to decide the issue now.

9

(Letter by Sheldon Eisenberger to the Court) ("[Chase] has no standing in this action and we object to any attempt by [Chase] to address the Court.").

In exceptional circumstances, a nonparty to the initial action may be bound by claim preclusion. But the Supreme Court recently reiterated that "[a] person who was not a party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit." *Taylor v. Sturgell*, 128 S.Ct. 2161, 2171 (2008) (internal quotation marks omitted). The Court rejected the broad theories of "virtual representation" developed by several federal Courts of Appeals and confined nonparty claim preclusion to six clearly-defined categories. *Id.* at 2173-78. Of these six categories, only one appears to be potentially applicable to this case: "a nonparty may be bound by a judgment because he was adequately represented by someone with the same interests who was a party to the suit." *Taylor*, 553 U.S. at 2172 (internal quotation marks and alterations omitted).

It is unlikely in the extreme that Kahan will be able to bring the relationship between Chase and the United States within this exception. As illustrations of the category, the Supreme Court gave "class actions, and suits brought by trustees, guardians, and other fiduciaries." *Id.* Though Kahan contends that the United States "acted as a surrogate for Chase and did Chase's bidding," Reply Br. 3, Kahan's rhetoric falls short of establishing the kind of agency relationship that would justify binding a nonparty to the initial action. The government's interest in pursuing fraud and Chase's interest in recovering the $2 million may have coincided for a time, but at bottom those interests are markedly different and likely to diverge. The fact that the government chose to dismiss the forfeiture action cold have reflected a number of considerations (*e.g.*, resource-allocation concerns) having little or nothing to do with the merits

10

of a claim by Chase that Kahan is not legally entitled to the disputed funds. And the government's abandonment its claim obviously weakens Kahan's suggestion that the United States acted as Chase's puppet in bringing the forfeiture action. I need not decide finally at this point whether Kahan is entitled to invoke claim preclusion against Chase, but I do conclude that the doctrine fails to render Chase's claim so baseless as to deprive TD Bank of the ability to bring an interpleader action.

As an alternative argument, Kahan invokes the doctrine of laches, contending that the action should be halted as a result of its Chase's delay in asserting its entitlement to the funds. Interpleader is an equitable remedy, and a party can properly be barred from invoking it by the party's own unreasonable delay. *See, e.g., Bell v. Nutmeg Airways Corp.*, 66 F.R.D. 1, 4 (D. Conn. 1975). Here, however, the party seeking interpleader is TD Bank. TD Bank is guilty of no delay, having commenced this action almost immediately when the funds were returned to Kahan's account at the close of the forfeiture action. To the extent that Kahan contends that Chase's failure to intervene in the forfeiture action should now bar Chase's claim, that is an argument that goes to the merits of Chase's claim. For now, I need only determine whether the doctrine of laches renders Chase's claim utterly baseless, and I find that it does not. Kahan itself asserts that the result of a successful forfeiture proceeding by the government would have been the return of the funds to Chase. *See* 18 U.S.C. § 981(e). At the second stage of the action, Chase will have at least a plausible argument that it was entitled to await the result of the forfeiture action before filing suit against Kahan or otherwise formally asserting its claim to the money.

11

Finally, Kahan contends that it is unfair to permit Chase to obtain the equivalent of prejudgment attachment of Kahan's funds without first meeting the strict requirements for that form of relief. New York C.P.L.R. 6212 requires a party seeking an order of attachment to submit evidence establishing, among other things, a probability of success on the merits of its claim.[5] Kahan asserts that Chase is unable to meet this burden, and that it would be inequitable to allow Chase to evade it. But this effort to superimpose the prejudgment attachment standard on the interpleader action again pays insufficient regard to the fact that TD Bank, not Chase, is the party seeking to invoke the interpleader remedy. Having established a genuine fear of inconsistent liability, TD Bank is entitled to invoke the interpleader remedy without showing that Chase is likely to succeed on the merits.

## CONCLUSION

For the reasons stated above, the motion to dismiss the complaint was denied, and TD Bank's motion for an order permitting it to pay the contested funds into court was granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 19, 2010
      Brooklyn, New York

---

[5] Under Federal Rule of Civil Procedure 64, a federal district court in this district is obligated to apply New York's attachment rules unless federal law supplies a different rule.