UNITED STATES DISTRICT COURT          <u>ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                            :
T.D. BANK, N.A.,                          :
                                            :          <u>ORDER</u>
                         Plaintiff,      :
                                            :
                -against-         :
                                          :          10-CV-2843 (JG) (ARL)
JP MORGAN CHASE BANK, N.A.      :
and MAX KAHAN, INC.,            :
                                          :
                       Defendants.    :
------------------------------------------------------------X

A P P E A R A N C E S:

        PEPPER HAMILTON LLP
                620 Eighth Avenue, 37th Floor
                New York, New York 10018
        By:    Angelo Stio, III
                Stephen G. Harvey
                Frank H. Griffin, IV
        *Attorneys for Plaintiff*

        LEVI LUBARSKY & FEIGENBAUM LLP
                1185 Avenue of the Americas, 17th Floor
                New York, New York 10036
        By:    Andrea Likwornik Weiss
                Andre Castaybert
        *Attorneys for Defendant JP Morgan Chase, N.A.*

        THE LAW OFFICE OF SHELDON EISENBERGER
                30 Broad Street
                New York, New York 10004
        By:    Sheldon Eisenberger
                *Attorneys for Defendant Max Kahan, Inc.*

JOHN GLEESON, United States District Judge:

        In this interpleader action filed by TD Bank, N.A. ("TD Bank"), interpleader

defendants Max Kahan, Inc. ("Kahan") and JPMorgan Chase Bank, N.A. ("Chase") assert

competing claims to funds in the amount of $2,089,000.00 that have been deposited by TD Bank

with the Clerk of the Court. On August 4, 2010, I denied a motion by Kahan to dismiss the

interpleader complaint.[1] The interpleader defendants then filed answers to the complaint, laying

out their claims to the disputed funds and asserting crossclaims against one another. Kahan now

moves pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings dismissing Chase's four

crossclaims against it. Kahan argues that Chase has failed to state a claim with respect to each of

its crossclaims and that the crossclaims are barred by the doctrine of laches. For the reasons

stated below, Kahan's motion is denied in its entirety.

BACKGROUND

A.     *The Underlying Fraud*

On October 28, 2009, the United States commenced an *in rem* civil forfeiture

action against the funds at issue in this case, which at the time were being held in a TD Bank

account in Kahan's name. *See* Complaint, *United States v. TD Bank Account No. 7920060725*,

No. 09-CV-4663 (JG) (E.D.N.Y. Oct. 28, 2009), ECF No. 1. The following facts are as alleged

by the government in its October 28 complaint.

In June 2006, Xiuging Yao opened an account at Chase on which he was the sole

signatory. To open the account, Yao provided a Chinese passport and a Chinese identification

card, each bearing his name and photograph. Yao's business partner, Wenru Yang, was given

power of attorney to conduct transactions on the account. The Chase account manager for Yao's

account was Julia Fan, whose office is in Manhattan. From the time the account was opened

---

[1]     I explained my ruling in a memorandum decision on August 19, 2010. *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 10-CV-2843 (JB) (ARL), 2010 WL 3310262 (E.D.N.Y. Aug. 19, 2010).

until the events giving rise to this case, all transactions on the Yao account were conducted through Fan, who acted only after she was contacted either by Yao or by Yang.

On September 14 and 15, 2009, an unknown individual entered a Flushing branch of Chase and identified himself as Yao. He presented a Chinese passport, a National Foreign Identification Card, and a Chinese National Identification card, all bearing Yao's name. All three were later determined to be counterfeit. The imposter requested that $1.9 million in United States currency be wire transferred from Yao's Chase account to an HSBC account held in the name of Golden On Star Limited. On September 16, $1.9 million was transferred as requested. On September 18, the same individual returned to the Flushing branch, where he again presented the counterfeit passport. He requested the transfer of an additional $190,000 from Yao's account to the HSBC account, and Chase complied with the request.

Over the course of the following week, a total of $2.089 million was transferred from the HSBC account into Kahan's TD Bank account: $1.2 million was wired to the TD Bank account on September 18, an additional $690,000 was transferred on September 19, and the remaining $199,000 was transferred on September 21.

On September 23, after these transfers were complete, Fan first became aware of the significant transfer activity that had taken place in Yao's Chase account during the period between September 14 and September 18. Her suspicions aroused, Fan examined the counterfeit identification documents and determined that the photographs they bore did not match those on Yao's true identity documents. She contacted Yang and Yao and learned that neither had conducted the transactions and that, in fact, Yao was in China and had been at the time the transactions took place. Yao confirmed that he had not authorized the transfers from his account.

B.      *The Forfeiture Proceedings*

On the basis of the government's October 28, 2009 complaint, I issued a preliminary order of forfeiture, authorizing the seizure of the $2.089 million from Kahan's TD Bank account.  *See* Summons and Warrant for Arrest of Articles in Rem, *United States v. TD Bank Account No. 7920060725*, 09-CV-4663 (JG) (E.D.N.Y. Oct. 28, 2009), ECF No. 2.  In accordance with my order, the seized money was paid to the United States Secret Service pending resolution of the forfeiture action.  Kahan filed a claim to the funds and an answer and counterclaim, asserting that it was the bona fide and sole owner of the funds.  *See* Claim of Max Kahan, Inc., *United States v. TD Bank Account No. 7920060725*, 09-CV-4663 (JG) (E.D.N.Y. Dec. 7, 2009), ECF No. 3; Verified Answer With Counterclaim, *United States v. TD Bank Account No. 7920060725*, 09-CV-4663 (JG) (E.D.N.Y. Jan. 8, 2010), ECF No. 9.

Chase was not a party to the forfeiture action, and Kahan appropriately disputed Chase's standing to make submissions in that action.  *See* Letter from Sheldon Eisenberger to the Court, *United States v. TD Bank Account No. 7920060725*, 09-CV-4663 (JG) (E.D.N.Y. April 27, 2010), ECF No. 17; *see also T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 10-CV-2843 (JB) (ARL), 2010 WL 3310262, *5 (E.D.N.Y. Aug. 19, 2010) (noting Kahan's vigorous and proper opposition to Chase's participation in the forfeiture action).

At a status conference on April 15, 2010, the government informed the Court that it intended to abandon the forfeiture action.  Accordingly, on April 28, 2010, I issued an order dismissing the government's complaint, vacating the October 28, 2009 seizure warrant, and directing the Secret Service to return the funds and accrued interest to TD Bank for deposit into

Kahan's account. *See* Order Dismissing Case, *United States v. TD Bank Account No. 7920060725*, 09-CV-4663 (JG) (E.D.N.Y. April 29, 2010), ECF No. 19 ("Order Dismissing Case"). On June 17, 2010, the government informed the Court that the funds had been returned to Kahan's account at TD Bank and that $2,357.71 in accumulated interest would be added to the account within five days.[2]

Kahan took exception to two aspects of my order dismissing the forfeiture action. First, at oral argument on April 28, 2010, Kahan requested that the forfeiture action be dismissed with prejudice. *See* Transcript of Status Conference at 2-4, *United States v. TD Bank Account No. 7920060725*, 09-CV-4663 (JG) (E.D.N.Y. April 28, 2010) ("Apr. 28 Tr."). I saw no need to determine whether the order would be with or without prejudice and stated on the record that the question should be resolved, if necessary, in subsequent litigation. *Id*. at 3-4. The final dismissal order was silent on the question of prejudice. *See* Order Dismissing Case.

Second, Kahan disputed my decision to order that the funds be returned to the TD Bank account from which they were seized pursuant to the October 28 summons and warrant. Kahan acknowledged that returning the funds to its TD Bank account would afford Chase an opportunity to invoke New York law to impose an obligation on TD Bank to freeze and remit the funds to Chase.[3] Apr. 28 Tr. at 5, 12-14. Kahan argued that there was no basis in law or equity

---

[2]    In its interpleader complaint, TD Bank fails to account for this interest, alleging that the amount in dispute is $2,089,000. Similarly, in their pleadings, defendants each allege an interest in funds amounting to $2,089,000. However, on September 27, 2010, at oral argument on this motion, the defendants clarified that they each claim ownership of the $2,089,000 in dispute plus any interest that has accrued on that principle since the money was seized pursuant to my October 28, 2009 order.

[3]    *See* N.Y. Banking Law § 134(5) : "Notice to any bank or trust company of an adverse claim to any property, or to a deposit of cash or securities standing on its books to the credit of, or held for the account of, any person shall not be effectual to cause said bank or trust company to recognize said adverse claimant unless  said adverse  claimant  shall  also . . . execute to said bank or trust company,  in form and with sureties acceptable to it a bond, indemnifying said bank or trust company from any and all liability, loss, damage, costs and expenses,  for  and on account of the payment of or delivery pursuant to such adverse claim . . . ."

for permitting Chase this opportunity and requested that the funds instead be put directly into its possession by means of a check or that it be wire transferred to a bank of Kahan's choosing. *Id*. at 5-8, 10. Setting aside Chase's asserted interest in the funds, I viewed the government's motion to dismiss the forfeiture action and vacate the summons and warrant as an effort to "undo[] what was done." *See id*. at 8. Accordingly, I ordered that the funds be returned to the same bank account from which they had been seized. *See id*.; Order Dismissing Case.

C.     *Kahan's and Chase's Competing Claims*

As anticipated by Kahan, Chase has asserted a claim to the funds in the TD Bank account. TD Bank and Chase allege that in October 2009, shortly before the United States commenced its *in rem* forfeiture action, Chase informed TD Bank of its interest in the funds, claiming they were traceable to deposit money stolen from Yao, a Chase customer. Following dismissal of the forfeiture action, Chase sent a second letter to TD Bank on May 3, 2010, again stating that the funds were directly traceable to money stolen from a Chase account and renewing its October 2009 request that TD Bank remit the funds to Chase. Meanwhile, on April 29, 2010, the day that the government's forfeiture action was dismissed, Kahan wrote to TD Bank demanding that TD Bank turn the money over to Kahan immediately upon its return by the Secret Service.

The interpleader defendants spell out their claims to the disputed assets in their respective answers to the interpleader complaint and their crossclaims against one another. Kahan alleges that the funds were placed in its TD Bank account "in connection with Kahan's bona fide sale of gold and platinum to a customer named Golden On Star Limited," and that no

evidence has ever been presented showing that Kahan is anything but a bona fide owner of the funds. On that basis, Kahan asserts a crossclaim against Chase for a declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201(a) that it is the funds' true owner. In addition, Kahan seeks attorneys' fees, costs, and disbursements.

Chase, on the other hand, alleges that the funds in Kahan's TD Bank account were procured through a fraudulent bank scheme, and that Chase is therefore entitled to their return. Chase asserts four New York State common law causes of action against Kahan: money had and received, payment by mistake, unjust enrichment, and conversion. Kahan now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking to dismiss Chase's crossclaims against it. Kahan argues that Chase has failed to state a claim with respect to each of its crossclams, and that all are barred by the equitable doctrine of laches.

## DISCUSSION

A.  *Legal Standard*

The same standard that applies to a motion to dismiss under Rule 12(b)(6) applies to a Rule 12(c) motion for judgment on the pleadings.[4] *See Bank of N.Y. v. First Millenium, Inc.*,

---

[4]  Arguably, Kahan's motion is not properly presented as one for judgment on the pleadings; it should perhaps have been brought as a motion to dismiss under Rule 12(b)(6). A motion for judgment on the pleadings can typically be made only after the pleadings are closed. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1369 (3d ed. 2010); *see also Harris v. WGN Cont'l Broad. Co.*, 650 F.Supp. 568, 572 (N.D. Ill. 1986) ("A motion to dismiss filed after the pleadings have been closed is appropriately considered a motion for judgment on the pleadings."); *Johns-Manville Corp. v. United States*, 12 Cl.Ct. 1, 14 (Ct. 1987) ("A motion for judgment on the pleadings is made after the pleadings are closed."). When cross- and counterclaims are filed, pleadings are not closed until answers to those claims have been filed. *See Johns-Manville Corp.*, 12 Cl.Ct. at 14 (discussing counterclaims); *see also* Fed. R. Civ. P. 12(a)(1)(B) ("A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim").

This reasoning has been applied in the interpleader context, where it has been held that each defendant "must state his claim and answer that of the other so that the issue between them is joined." *Phoenix Mut. Life Ins. Co. of Hartford, Conn. v. Reich*, 75 F.Supp. 866, 888 (D.Pa. 1948) (cited in *Lowe's Inc. v. Hoyt Management Corp.*, 83 F.Supp. 863, 866 (S.D.N.Y. 1949)). However, at least one district court has, in an interpleader action, deemed answers to a defendant's cross- or counterclaims unnecessary. *See Old Colony Ins. Co. v. Lampert*, 129 F.Supp. 545, 550 (D.N.J. 1955). That court considered one defendant's nominal counterclaim "not

607 F.3d 905, 922 (2d Cir. 2010). I therefore accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (discussing Rule 12(c)), *cert. denied*, 513 U.S. 816 (1994); *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (discussing Rule 12(b)(6)). To survive a motion under Rule 12(c) or Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (discussing Rule 12(b)(6)). *See also Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (applying the same standard under Rule 12(c)). A claim is facially plausible only if the pleaded facts permit a court to reasonably infer that the plaintiff is entitled to relief. *Iqbal*, 129 S.Ct. at 1949. Where such an inference can be made, a motion pursuant to Rule 12(c) or Rule 12(b)(6) will be granted only where, on the facts admitted by the non-moving party, the moving party is clearly entitled to judgment. *See Sellers v. M.C.Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

---

a claim against any opposing party, but . . . merely an additional claim against the fund on deposit," and accordingly held that the claim did not require a responsive pleading. *Id.* The court noted that no party would be prejudiced by treating the counterclaim as a claim against the fund, and that requiring each interpleaded defendant to reply to each answer would serve no useful purpose, as the issues were clearly defined by the defendants' answers. *Id.* at 550-51.

It is immaterial for the purposes of this motion whether I treat each of the parties' nominal crossclaims as true crossclaims under Rule 13, requiring responsive pleadings, or as additional claims against the fund requiring no responses. If responsive pleadings are required, a Rule 12(c) motion for judgment on the pleadings is inappropriate at this time. In that case, however, Kahan's motion is properly treated as a motion to dismiss pursuant to Rule 12(b)(6). *See Little v. F.B.I*, 793 F.Supp. 652, 652 (D.Md. 1992) ("[I]t would appear that a motion for judgment on the pleadings is plainly inappropriate here, because the pleadings have not been closed by answers from all defendants . . . . At any rate, the Rule 12(c) motion is treated as fungible with the Rule 12(b)(6) motion . . . ." (citation omitted)), *aff'd*, 1 F.3d 255 (4th Cir. 1993).

Because the standard for a motion for judgment on the pleadings is identical to that for a motion to dismiss, my inquiry is the same whether I treat the motion as one under Rule 12(b)(6) or Rule 12(c). In addition, whether or not Chase's crossclaims are true crossclaims governed by Rule 13, I must accept as true all of Chase's allegations and disregard all of Kahan's allegations that are not admitted by Chase. *Compare Fed. R. Civ. P.* 8(b)(6) (". . . If a responsive pleading is not required, an allegation is considered denied or avoided."), *with Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010) (a court considering a motion to dismiss must restrict its inquiry to the "allegations contained within the four corners of the complaint").

B.    *Chase's Claims for Money Had and Received, Payment by Mistake, and Unjust Enrichment*

The first three of Chase's crossclaims – for money had and received, payment by mistake, and unjust enrichment – have been presented as separate causes of action, but all three are claims for restitution premised on the principle that recovery is to be had *ex aequo et bono*, according to what is equitable and good.  *See* 22A N.Y. Jur. *Contracts* § 516 (2010); *see also Banque Worms v. BankAmerica Int'l.*, 77 N.Y.2d 362, 366 (1991) (noting that in the area of restitution, similar rules have been applied in actions for money had and received, mistaken payment, and unjust enrichment).  All three causes of action turn on a single inquiry: whether Kahan has benefited from what is rightfully Chase's such that equity and good conscience demand restoration of the disputed property to Chase.  *Id.  See also Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007) ("It is well settled that '[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'" (quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421 (1972), *cert denied*, 414 U.S. 829 (1973)) (brackets in the original)); *Mfrs. Hanover Trust Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 708 (1st Dep't 1990) ("Actions to recover money paid under mistake are frequently styled as actions for money had and received, the basis of which is that the defendant has received money which, in equity and good conscience, should have been paid to or on behalf of the plaintiff and that, under such circumstances, the defendant ought to pay it over." (citations omitted)).

More specifically, the elements of Chase's claim for money had and received "are that (1) defendant received money belonging to plaintiff; (2) defendant benefited from the receipt

of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984) (citing *Miller v. Schloss*, 218 N.Y. 400, 407 (1916)). The elements of a claim for payment by mistake are that plaintiff made a payment under a mistaken apprehension of fact, that defendant derived a benefit as a result of this mistaken payment, and that equity demands restitution by defendant to plaintiff. *See Ball v. Shepard*, 202 N.Y. 247, 253 (1911); *Blue Cross of Cent. N.Y., Inc. v. Wheeler*, 461 N.Y.S.2d 624, 626 (4th Dep't 1983). Finally, a claim for unjust enrichment consists of three elements: "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) (citing *Clark v. Dabby*, 751 N.Y.S.2d 622, 623 (2002)); *see also Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009).

The factual allegations in the complaint and the inferences that can readily be drawn from them provide plausible, and perhaps even compelling, support for each of Chase's first three crossclaims. According to Chase, it was fraudulently induced to transfer $2.09 million into an HSBC bank account that was otherwise empty and created for the sole purpose of receiving the funds. Within days, $2.089 million – 99.05%, or all but $1,000, of those funds – had been transferred out of the HSBC account into Kahan's TD Bank account. These allegations, accepted as true, establish that Kahan, as a result of fraud and mistake, received money rightfully belonging to Chase, and that equity demands its return.

In support of its motion, Kahan raises separate challenges to each claim. These challenges boil down to three arguments: that Kahan and Chase had no direct dealings, so that

Chase's loss and Kahan's gain are not sufficiently related to support Chase's claims for restitution; that Kahan was a bona fide purchaser of the funds and so was not enriched and received no benefit upon their receipt (other than the reasonable consideration for the gold and platinum it delivered to Golden On Star Limited); and that equity and good conscience do not weigh in Chase's favor. All of Kahan's arguments are unavailing.

First, Kahan notes that by Chase's own admission it did not receive payment directly from Chase, and the parties were not in privity. Privity and direct transfer of funds from plaintiff to defendant are not elements of the claims for restitution asserted by Chase. *See, e.g.*, *Mfrs. Hanover Trust Co.*, 559 N.Y.S.2d at 708 ("It does not matter whether the benefit is directly or indirectly conveyed.").[5] When one party mistakenly makes a payment, and another benefits from that payment, a quasi-contractual relationship is created, which gives rise to an obligation to pay. *See Cohen v. City Co. of New York*, 283 N.Y. 112, 115 (1940) (". . . 'Having money that rightfully belongs to another, creates a debt . . . .'" (quoting *Byxbie v. Wood*, 24 N.Y. 607, 610 (1862))). It is true that both state and federal courts in New York have held that the connection between a plaintiff's alleged loss and a defendant's alleged gain can in some circumstances be too attenuated to create a quasi-contractual relationship and support a claim for restitution. *See, e.g.*, *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 216 (2007) (relationship too attenuated where consumers alleged they had paid inflated prices for tires because defendants – manufacturers of a

---

[5]     Specifically, direct payment and privity between the parties are not elements of a claim for money had and received, *see, e.g.*, *Board of Educ. of Cold Spring Harbor Cent. Sch. Dist. v. Rettaliata*, 78 N.Y.2d 128, 136 (1991) (allowing action for money had and received where money allegedly owed to plaintiffs was received by defendants from third parties), a claim for payment by mistake, *see, e.g.*, *Blue Cross of Cent. N.Y., Inc. v. Wheeler*, 461 N.Y.S.2d 624 (4th Dep't 1983) (a claim for payment by mistake lies where defendant has benefited from plaintiff's mistaken payment, even where defendant was not the immediate payee), or a claim for unjust enrichment, *see, e.g.*, *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16 (2007) ("[A] plaintiff need not be in privity with the defendant to state a claim for unjust enrichment.").

chemical used by tire manufacturers – were engaged in price-fixing scheme); *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439, 454 (E.D.N.Y. 2007) (relationship too attenuated where plaintiff cigarette vendor alleged lost profits due to defendants' unauthorized sale of untaxed cigarettes). However, as alleged by Chase, the relationship between Chase's loss and Kahan's gain is straightforward and proximate: certain identified funds were removed from a Chase account and placed into Kahan's TD Bank account via a single intermediary. The claims for restitution asserted by Chase require proof of no other, independent relationship between the parties. "[T]he fact that money was transferred directly from [plaintiff's possession] to [defendant's] (albeit by a third party) is enough to sustain a claim for unjust enrichment." *Newbro v. Freed*, 06-CV-1722, 2007 WL 642941, at *2 (2d Cir. Feb. 27, 2007). Indeed, it is a long-standing principle of New York law that a plaintiff may follow stolen assets as far as it can trace them, and can recover its property from those with whom it has had no direct dealings. *See, e.g.*, *Newton v. Porter*, 69 N.Y. 133, 136 (1887) ("The doctrine upon which the judgment in this case proceeded, viz.: that the owner of negotiable securities stolen and afterwards sold by the thief may pursue the proceeds of the sale in the hands of the felonious taker *or his assignee without notice* . . . is founded upon the plainest principles of justice and morality, and is consistent with the rule in analogous cases acted upon in courts of law and equity." (emphasis added)).[6] Accordingly, Chase's failure to allege privity or direct dealings between itself and Kahan does not defeat its claims for money had and received, payment by mistake, and unjust

---

[6] In its effort to refute this proposition, Kahan relies on *Excalibur Systems, Inc. v. Aerotech World Trade, Ltd.*, 98-CV-1931 (JG), 1999 WL 1281496 (E.D.N.Y. Dec. 30, 1999). In that case, plaintiff sought to recover from an individual defendant a sum of money it had paid to the defendant's employer. *Id.* at *1. I held that plaintiff had failed to make out a claim for money had and received. *Id.* My holding was premised not on plaintiff's failure to allege that the defendant received money directly from plaintiff, but rather on plaintiff's failure to allege that the defendant received the money at all. *Id.*

enrichment.

Second, Kahan alleges that it received the funds in good faith and for full consideration. Chase has not alleged otherwise. Kahan argues that Chase has therefore failed to state a claim for money had and received because, as a bona fide purchaser, Kahan received no benefit from the funds. Kahan confuses the substantive merits of Chase's claims with the pleading requirements they impose. Ultimately, as I observed in denying Kahan's motion to dismiss the interpleader complaint, Chase cannot prevail on its claims for restitution if Kahan can show that it received the funds in good faith, that it had no notice the funds were procured by fraud, and that it gave commensurate value in exchange for the money. *See T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 10-CV-2843 (JG) (ARL), 2010 WL 3310262, at *3 (E.D.N.Y. Aug. 19, 2010); *see also Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 615 (2d Cir. 1998) ("To qualify as a bona fide purchaser [of misappropriated trust assets], the transferee must take the property for value and without notice of breach of trust." (internal quotation marks omitted)). However, Kahan's alleged status as bona fide purchaser is an affirmative defense, which Kahan bears the burden of alleging and proving. *See Wood v. Nat'l City Bank*, 24 F.2d 661 (2d Cir. 1928) (referring to bona fide purchaser status as "a defense which must be pleaded"); *Hicksville Props., LLC v. Wollenhaupt*, 711 N.Y.S.2d 729, 730 (2d Dep't 2000) (defendant claiming to be bona fide purchaser must present sufficient proof to establish that he gave consideration for value and acted in good faith without notice of unclean title). If, at the summary judgment or trial phase, Kahan makes a prima facie showing that it was a good faith purchaser for fair value, Chase will have to disprove the defense in order to prevail on its claims. *See Maiorano v. Garson*, 886 N.Y.S.2d 190, 193 (2d Dep't 2009) (party claiming

bona fide purchaser status has a prima facie burden of showing it was a good faith purchaser for value). At this stage in the proceedings, however, Chase has not admitted to Kahan's good faith and fair value allegations,[7] and it was not required to affirmatively deny them as an element of its crossclaims. *See Solomon R. Guggenheim Foundation v. Lubell*, 550 N.Y.S.2d 618, 624 (1st Dep't 1990) ("We hold that an issue of fact exists as to whether the [disputed asset] was stolen, and that the burden of proof with respect to this issue is on defendant, it being settled that a complaint for wrongful detention contains every statement of fact essential to a recovery where it alleges the plaintiff's ownership of the property and the defendant's possession and refusal on demand to deliver.").[8]

Finally, Kahan argues that Chase has failed to allege that under principles of equity and good conscience, Kahan should be required to return the disputed funds to Chase. Kahan argues that the scales of equity cannot tip in Chase's favor because Chase's own negligence is to blame for the fraudulent transfer of money out of Yao's account, Chase has not alleged that Kahan is at fault for Chase's loss, and Chase has not alleged that Kahan did not detrimentally rely on receipt of the disputed funds. Once again, Kahan's arguments go to the

---

[7] For the purposes of this motion, I treat these allegations as denied and disregard them. *See supra* note 4.

[8] In a somewhat related argument, Kahan asserts a "discharge for value" defense to Chase's claim for payment by mistake. Under this rule, "'[a] creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.'" *Banque Worms*, 77 N.Y.2d at 367 (quoting Restatement (First) of Restitution § 14 (1937)) (brackets in the original). This defense would apply in this case only if either Chase or Yao, from whose account the money was transferred, had been indebted to Kahan for the amount Kahan received. Neither party's allegations suggest that this is true. In any event, whether Kahan can successfully invoke the "discharge for value" rule is irrelevant at this stage. The rule is applied in the New York courts and the Second Circuit as a defense to a plaintiff's claim that it is entitled to recover funds transferred in error. *Banca Commerciale Italiana, N.Y. Branch v. N. Trust Int'l Banking Corp.*, 160 F.3d 190, 194 (2d Cir. 1998). Chase does not bear the burden of raising and refuting this defense in its opening pleadings, and its failure to do so cannot be grounds for granting Kahan's present motion.

14

merits of Chase's claims rather than to their legal sufficiency.[9]  Where Chase's allegations

support a claim that Kahan, in equity and good conscience, should return the funds that were

removed from Chase's possession through fraud, "if circumstances exist which make such

recovery inequitable, the burden of proving that fact rests upon the party resisting payment."[10]

*Hathaway v. Del. County*, 185 N.Y. 368, 370 (1906).  To support its first three crossclaims,

Chase must only allege factors weighing in favor of repayment sufficient to create a plausible

inference that equity demands restitution.  As it has done so,[11] the burden is on Kahan to allege

[9]    Kahan's arguments concerning the equities are replete with questions of fact – such as whether Chase acted negligently and whether Kahan relied on receipt of the funds – that cannot be decided on a Rule 12(b)(6) or Rule 12(c) motion.  For instance, Chase alleges that it required three forms of government-issued photo identification from the fraudster before it executed his transfer requests, and that once the transfers were made, it promptly discovered the fraud and attempted to recall the wires.  Whether Chase should have taken additional measures to prevent its loss is a question of fact.  A review of the facts after the parties have had a chance to conduct discovery may reveal that the equities favor Kahan.  *See, e.g.*, *Aaron Ferer & Sons*, 731 F.2d at 115, 126 (claim for money had and received was properly dismissed following close of evidence at bench trial, where evidence showed that plaintiff's conduct was directly responsible for its loss, and defendant had reasonably relied on plaintiff's representations).  In the meantime, Chase's allegations support a plausible inference that Chase is entitled, in equity and good conscience, to recover the funds that were stolen from its possession and transferred into Kahan's.

[10]    Specifically, to make out its claims for restitution, Chase did not need to allege that it acted without negligence.  *See Ball v. Shepard*, 202 N.Y. 247, 253 (1911) (identifying as a "well-recognized principle of law" that "a party who pays money under a mistake of fact, to one who is not entitled thereto, must in equity and good conscience be permitted to get it back . . . even though the mistake is the result of negligence"); *Mfrs. Trust Co. v. Diamond*, 186 N.Y.S.2d 917, 918-19 (1st Dep't 1959) ("'[M]oney paid under a mistake of fact may be recovered back however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund.'" (quoting *Nat'l Bank of Commerce in N.Y. v. Nat'l Mechs.' Banking Ass'n of N.Y.*, 55 N.Y. 211, 213 (1873)); *Citibank , N.A. v. Warner*, 449 N.Y.S.2d 882, 883 (N.Y. Sup. 1981) (plaintiff's negligence does not bar recovery in an action for money had and received).  Nor must Chase have alleged that Kahan acted wrongfully.  *See Diamond*, 186 N.Y.S.2d at 918 ("While one seeking reformation must establish mutual mistake or mistake of one party and fraud of the other, this is not a requirement when only rescission or the recovery back of money paid is prayed for.  Unilateral mistake alone will support such claim." (citing *Rosenblum v. Mfrs. Trust Co.*, 270 N.Y. 79, 85 (1936))); *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978) ("Unjust enrichment . . . does not require the performance of any wrongful act by the one enriched  . . . . Innocent parties may frequently be unjustly enriched." (citations omitted)).  Finally, Chase does not bear the burden of alleging that Kahan did not rely on receipt of the funds.  *Geller v. Prudential Ins. Co. of America*, 237 F.Supp.2d 210, 223 (E.D.N.Y. 2002) ("[D]etrimental reliance is an affirmative defense that must be raised in a responsive pleading."); *see also Bank Saderat Iran v. Amin Beydoun, Inc.*, 555 F.Supp. 770, 774 (S.D.N.Y. 1983) (plaintiff could not recover on claim of mistaken payment where defendant was able to prove that he changed his position in reliance of the payment and could not be made whole if restitution were ordered).

[11]    Chase's allegations that it was actively defrauded by an unknown party that immediately transferred the proceeds of its wrongdoing to Kahan readily distinguish this case from the ones cited by Kahan in which courts have dismissed plaintiffs' unjust enrichment claims for failure to plead that the equities favor restitution.  For instance, the plaintiffs in *Dragon Inv. Co. II LLC v. Shanahan*, 854 N.Y.S.2d 115, 118 (1st Dep't

all countervailing factors, and each party is entitled to present evidence in support of its position.

For the foregoing reasons, Chase has stated a claim for money had and received, for payment by mistake, and for unjust enrichment. Accordingly, Kahan's motion for judgment on the pleadings for failure to state a claim is denied with respect to Chase's first three counterclaims.

C.      *Chase's Claim for Conversion*

The fourth counterclaim that Chase asserts, and that Kahan moves to dismiss on the pleadings, is for conversion. Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403 (2d Cir. 2006) (internal quotation marks, citations, and brackets omitted). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colativo v. N.Y. Organ Donor Network, Inc.*, 8 NY.3d 43, 50 (2006) (citations omitted). Chase has alleged that it has a possessory interest in the disputed funds, that Kahan possesses no interest in the funds, and that Kahan's assertion of ownership over the funds prevents Chase from taking possession of them. Chase alleges that $2.09 million was in its possession and was taken from its possession by means of fraud.[12] Chase further alleges that $2.089 million of the fraudulently

---

2008), alleged only that they acted in poor judgment when investing money with defendant, not that they lost assets as a result of fraud or in reliance upon mistaken fact. *Cf. Banca Commerciale Italiana, N.Y. Branch v. N. Trust Int'l Banking Corp.*, 95 CV 10700 (LAP), 1999WL 217591 (S.D.N.Y. April 30, 1997) (granting summary judgment in favor of defendant on unjust enrichment claim where plaintiff identified no reason for transfer of funds other than its own inexplicably poor judgment), *aff'd*, 160 F.3d 90 (2d Cir. 1998).

[12]      While the funds were originally held by Chase in the name of an account holder, Yao, Chase has allegedly reimbursed Yao for the full amount transferred from the account.

transferred assets ended up in the TD Bank account in Kahan's name.[13]  Finally, Chase alleges

that it demanded return of the funds from TD Bank, and that TD Bank refused because Kahan

interfered by asserting its own claim of ownership.  On the basis of these allegations, Chase has

stated a claim for conversion under New York law.

Kahan argues that money cannot be the subject of a claim for conversion.  Its

argument is overstated.   Under New York law, "money can be the subject of a conversion action

when it can be identified and segregated as a chattel can be."  *Payne v. White*, 477 N.Y.S.2d 456,

458 (3d Dep't 1984).  As Kahan argues, New York courts have repeatedly held that account

holders cannot assert claims against their banks for conversion of deposit monies.  *See, e.g.*,

*Chem. Bank v. Ettinger*, 602 N.Y.S.2d 332, 335-36 (1st Dep't 1993); *United Sys. Assocs. v.*

*Norstar Bank Upstate N.Y.*, 566 N.Y.S.2d 793, 794 (3d Dep't 1991); *Luxonomy Cars, Inc. v.*

*Citibank, N.A.*, 408 N.Y.S. 2d 951, 954 (2d Dep't 1978).  These courts have explained that banks

and their customers are in a debtor-creditor relationship, and funds in a customer's checking

account are, from the bank's perspective, not "specific and identifiable property."  *Norstar Bank*,

566 N.Y.S. 2d at 794.  However, where a third party to this relationship extracts specific,

identifiable sums from a particular account, those funds can serve as the basis for a conversion

action.  *See, e.g.*, *Newbro v. Freed*, 409 F.Supp.2d 386 (S.D.N.Y. 2006) (funds transferred by

broker from one client's account to another were sufficiently identifiable to support a claim for

conversion), *aff'd*, 2007 WL 642941; *Republic of Haiti v. Duvalier*, 626 N.Y.S. 2d 472, 475 (1st

Dep't 1995) ("funds of a specific, named bank account are sufficiently identifiable" to support a

claim for conversion); *Payne*, 477 N.Y.S.2d 458-59 ("a person entitled to a bank deposit which

---

[13]      As mentioned above, those funds are currently in an interest-bearing account under the control of
the Clerk of the Court.

has been paid to another person without authority . . . has a cause of action against the latter for the money thereby received" where "the funds in question were clearly identifiable as the proceeds of a specific named bank account.").

Chase's factual allegations provide ample support for inferring that the funds removed from its possession are the same funds that were placed in Kahan's TD Bank account. Taken as true, Chase's allegations that $2.09 million was transferred from Yao's Chase account into an otherwise empty HSBC account and that, within days, $2.089 million was transferred from the HSBC account into Kahan's TD Bank account, leave room for little doubt that the funds placed in Kahan's account were the same funds that were withdrawn from Yao's account. Chase's allegations concern a specific and identifiable asset, which can support a claim for conversion. Accordingly, Chase has not failed to state a claim for conversion simply because the property alleged to be wrongfully detained is money.

Second, Kahan argues that Chase's claim for conversion should be dismissed on the pleadings because Chase has not alleged that Kahan was complicit in the theft of the funds, or that Kahan is anything other than a bona fide purchaser of the funds. The absence of such allegations from Chase's pleadings provides no grounds for dismissing Chase's claim for conversion. No allegation of wrongdoing by the defendant is necessary to state a claim for conversion. *See LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997) ("Wrongful intent simply is not an element of an otherwise valid conversion claim."); *Gruntal v. Nat'l Surety Co.*, 254 N.Y. 468, 472 (1930) (it is "no excuse" in a conversion action that defendants "acted in good faith and without knowledge of the theft"). *See also Newbro*, 409 F.Supp.2d at 396-97 ("[I]t is not a defense to conversion that one mistakenly believed that the property in question was their

own."), *aff'd*, 2007 WL 642941. Furthermore, as discussed extensively above, while Kahan's

bona fide purchaser defense may defeat Chase's claims on the merits,[14] it is an affirmative

defense that Kahan has the burden of alleging and proving.

Despite Kahan's arguments to the contrary, Chase has stated a claim for

conversion. Accordingly, Kahan's motion to dismiss Chase's fourth counterclaim on the

pleadings for failure to state a claim is denied.

D.    *Kahan's Assertion of Laches*

Finally, Kahan argues that all of Chase's crossclaims are barred by the doctrine of

laches. To establish laches, Kahan must show four elements: "(1) conduct by an offending party

giving rise to the situation complained of, (2) delay by the complainant in asserting his or her

claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of

the offending party that the complainant would assert his or her claim for relief, and (4) injury or

prejudice to the offending party in the event that relief is accorded the complainant." *Cohen v.*

*Krantz*, 643 N.Y.S.2d 612, 614 (2d Dep't 1996). The parties' pleadings do not establish all four

elements as a matter of law, and the doctrine of laches therefore does not provide grounds for

dismissing Chase's crossclaims.

As applied in the Second Circuit, New York's doctrine of laches requires Kahan

to show that Chase delayed for an unreasonable period of time before asserting its interest in the

funds. *See, e.g.*, *Robins Island Pres. Fund, Inc. v. Southold Dev.*, 959 F.2d 409, 423 (2d Cir.

1992). The pleadings do not suggest, let alone establish, unreasonable delay. Chase became

---

[14]    *See, e.g.*, *Newton*, 69 N.Y. at 137 ("The rule that a thief cannot convey a good title to stolen property has an exception in case of money or negotiable securities transferable by delivery, which have been put into circulation and have come to the hands of *bona fide* holders."); *cf. Gruntal*, 254 N.Y. at 474 (holding in conversion action that "a holder in due course of negotiable paper takes good title even from a thief.").

aware that Kahan was in possession of the disputed funds in late September or early October 2009.  It first formally asserted its interest in the funds in a legal proceeding on August 10, 2010, when it answered TD Bank's complaint in this interpleader action.  Setting aside the question of whether ten months is ever an unreasonably long time to wait before asserting claims in a formal legal proceeding, Kahan has not established that this period constituted unreasonable delay in light of the circumstances of this case.[15]  Indeed, if the timeline alleged in Chase's pleadings is true, Kahan cannot plausibly make a showing of unreasonable delay.

The pleadings suggest that, far from sitting on its rights, Chase informed TD Bank of its interest in the funds within weeks of discovering the fraud.  Almost immediately, approximately one month after the transfers had been completed, the United States initiated its forfeiture action.  While that action was pending, Chase did not initiate its own legal proceedings or otherwise formally assert its interest in the funds.  As Kahan itself has acknowledged, had the government prevailed in its forfeiture action, the funds would have been returned to Chase.  *See T.D. Bank, N.A.,* 2010 WL 3310262, at *6 (citing 18 U.S.C. § 981(e)).  Kahan's own arguments therefore lead to the conclusion that, far from being "wholly unexcused," *see Benedict v. City of N.Y.*, 250 U.S. 321, 328 (1919), Chase's decision to await the outcome of the forfeiture proceedings before taking action of its own was reasonable.  Within a week of the forfeiture action's dismissal, Chase once again informed TD Bank of its interest in the funds, and TD Bank initiated these proceedings the following month.  Kahan advances no argument that the approach Chase alleges it took to protect its asserted interest was unreasonable.

_____

[15]  In fact, the period of alleged delay that Kahan must establish was unreasonable was seven months, not ten months.  A defendant in New York cannot rely on the doctrine of laches where it was on notice that a plaintiff would assert a claim for relief.  *Cohen v Krantz*, 643 NYS 2d 612, 614.  Kahan was aware by April 28, 2010 at the latest that Chase was likely to file a formal claim to the funds.  *See* Apr. 28 Tr. at 5, 12-14.

Even if Chase's actions had constituted unreasonable delay, the pleadings do not establish that Kahan suffered substantial prejudice. A party might be prejudiced either because it changed its position in reliance on the plaintiff's delay, or because "the delay makes it difficult to garner evidence to vindicate his or her rights." *Robins Island*, 959 F.2d at 424; *see also O'Dette v. Guzzardi,* 611 NYS2d 294, 295-96 (2d Dept 1994) ("Laches is applicable where there has been a considerable delay resulting in a change of position, intervention of equities, loss of evidence, or other disadvantages."). Kahan does not argue that it has suffered evidentiary prejudice, but it does claim economic injury as a result of the alleged delay. New York's doctrine of laches reques a party to show not only that it is financially inconvenienced by the claims asserted against it, but that it detrimentally changed its position in reliance on the opposing party's delay. *See, e.g.*, *Serdarevic v. Advanced Medical Optics, Inc.*, 06 CV 7107, 2007 WL 2774177, at *5 (S.D.N.Y. 2007) ("Economic prejudice . . . may arise where a defendant will suffer loss of monetary investments or incur damages which likely would have been prevented by earlier suit."); *Love v. Spector*, 627 N.Y.S.2d 87, 88 (2d Dep't 1995) (laches did not apply where defendants failed to demonstrate reliance and change of position resulting from delay); *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 439 N.Y.S.2d 179, 187 (4th Dep't 1980) ("In order to show that he has been prejudiced, a defendant must show reliance and change of position resulting from the delay."); *O'Dette*, 611 N.Y.S.2d at 295-96 (applying laches where, "during the period in which plaintiff delayed commencement of the action, the defendant changed her position to her financial detriment" by spending thousands of dollars over the course of five years on improving real property she believed to be hers).

Here, Kahan has not established as a matter of law that it changed its financial

position in reliance on any delay by Chase.  Indeed, based on the pleadings I doubt that Kahan

will be able to support any such claim even upon development of the record.  Kahan has been

unable to make use of the $2.089 million since the government initiated its forfeiture action in

October 2009.  The pleadings suggest that any reliance by Kahan since then on an assumption

that it possessed and could make use of those funds would have been unreasonable regardless of

Chase's participation or non-participation in the forfeiture action.  That Kahan's business may

suffer from its future inability to rely on access to the funds during the pendency of this action is

no basis for dismissing Chase's claims on the pleadings.

       Kahan cannot establish all four required elements of laches on the pleadings.[16]

Accordingly, its motion to dismiss Chase's counterclaims on the basis of that doctrine is denied.

CONCLUSION

       For the reasons stated above, Kahan's motion for judgment on the

pleadings with respect to Chase's counterclaims is denied.


       So ordered.


       John Gleeson, U.S.D.J.

Dated: October 14, 2010
     Brooklyn, New York

---

[16]    Chase maintains that laches is a purely equitable defense that cannot be invoked against its counterclaims, because they are legal claims or are treated as such under New York law.  Because Kahan cannot establish the elements of laches as a matter of law, I need not address at this time Chase's argument that laches is unavailable due to the nature of its asserted counterclaims.