# LEVI LUBARSKY & FEIGENBAUM LLP

ATTORNEYS AT LAW
1185 AVENUE OF THE AMERICAS
17TH FLOOR
NEW YORK, NEW YORK 10036

TEL. (212) 308-6100
FAX (212) 308-8830
WWW.LLF-LAW.COM

March 30, 2011

*VIA ECF*
The Honorable Arlene R. Lindsay
United States Magistrate Judge
Eastern District of New York
814 Federal Plaza
Central Islip, New York  11722

Re: *TD Bank, N.A. v. JP Morgan Chase Bank, N.A., et al.*
10 Civ. 2843 (JG) (ARL)

Dear Judge Lindsay:

This firm represents interpleader-defendant JPMorgan Chase Bank, N.A. ("Chase") in the above-captioned action.  We write to ask the Court to compel interpleader-defendant Max Kahan, Inc. ("Kahan") to: (1) produce David Gluck, Kahan's compliance officer, for a deposition, which Chase noticed for March 30, 2011; and (2) produce the blank form that Kahan uses to record customer identification information (the "Kahan Form").  Kahan maintains that the deposition is irrelevant and duplicative, and that the document is irrelevant, and refuses to produce both the witness and the document.  I conferred in good faith with Kahan's counsel on March 29, 2011, but we were unable to resolve these issues.

Chase further requests that the Court order Kahan to pay Chase's costs and expenses of this motion, including attorneys' fees, pursuant to Rule 37(5)(A), because, for the reasons explained below, Kahan's refusal to produce the witness and the document is not substantially justified.

A.   **Relevant Background**

The issue in this case is whether Chase is entitled to the return of funds stolen from a customer's account, or whether Kahan, which received the funds allegedly in exchange for the sale of precious metals, is entitled to keep them.  In denying Kahan's motion to dismiss Chase's cross-claim, Judge Gleeson held that the burden is on Kahan to demonstrate that it received the funds in good faith, that it had no notice the funds were procured by fraud, and that it gave commensurate value in exchange for the money.  *T.D. Bank, N. A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843 (JG)(ARL), 2010 WL 4038826, at *6 (E.D.N.Y. Oct. 14, 2010).  If, however, at the summary judgment or trial phase, Kahan makes a prima facie showing that it was

Hon. Arlene R. Lindsay
March 30, 2011
Page 2

a good faith purchaser for fair value, Chase will have to disprove the defense in order to prevail on its claims. *Id.*

**B.     The Relevance of Gluck's Testimony**

Gluck's testimony is relevant to the issue of whether Kahan received the funds in good faith without notice that they were procured by fraud. Harold Weinstein, the Kahan officer who allegedly sold the precious metals to "Golden On Star Limited," testified that Gluck is Kahan's compliance officer and is responsible for "mak[ing] sure we have the forms that customers should fill out when they become customers." Weinstein Dep. 59:5-16. (Pages of Weinstein's deposition cited in this letter are attached hereto as Ex. A). These forms include W-9 forms and the Kahan Form, which lists certain customer identification data, including (but not necessarily limited to), company name, tax ID number, phone numbers, e-mail address, bank information and officer names. *Id.*, 59:17-62:23. Furthermore, Kahan's procedures require Kahan to obtain additional identifying information from new customers (and for international customers, to obtain the equivalent of a tax ID number), and to resolve any discrepancies in the information. *Id.*, 161:19-170:4.

The Kahan Form was not completed for Golden On Star Limited. Nor did Weinstein obtain customer identifying information required by Kahan's procedures in connection with its alleged sale of precious metals to Golden On Star Limited, a Hong Kong company, or resolve blatant inconsistencies in the identifying information it did obtain. *Id.* Instead, Weinstein accepted two letters, purportedly from that company, that are rife with indicia of fraud (e.g., on one letterhead the company is denominated "Golden On Star Limited," on the other it is "Gold On Star LTD;" the room number of the company is different on each letterhead; the street names and towns have inconsistent spellings; the letters are undated and are not even addressed to Kahan). *See* Ex. B. Weinstein claimed that with respect to international companies, mere receipt of a letter is sufficient. Ex. A, 65:10-66:5. Weinstein testified that he discussed the matter with Gluck after the fact. Ex. A, 236:3-7.

Gluck's testimony on, among other things, the documentation Kahan received and elected not to receive from Golden On Star Limited (or Gold On Star LTD) is relevant, within the meaning of Rule 26(b)(1), to whether Kahan was on inquiry notice of the fraudulent nature of the transaction and whether it turned a blind eye to facts that would have put it on notice. *See, e.g., Chen v. Geranium Dev. Corp.*, 243 A.D.2d 708, 709, 663 N.Y.S.2d 288, 288 (2d Dep't 1997) (status of good faith purchaser cannot be maintained by "one with knowledge of facts that would lead a reasonably prudent purchaser to make inquiries concerning such"). Nor is testimony on this issue duplicative. Chase is entitled to probe the veracity and accuracy of Weinstein's testimony regarding the sufficiency of the documentation by questioning Kahan's compliance officer, and to question Gluck about Weinstein's communications with him.

Furthermore, to support its good faith claim, Kahan contends that it relied on a well-known customer, one "Frank," who introduced Kahan to Golden On Star Limited. Although Frank was purportedly associated with three different companies that did business with Kahan over a period of years, Kahan did not produce completed Kahan Forms for any of these

Hon. Arlene R. Lindsay
March 30, 2011
Page 3

companies, and produced only one (undated) W-9 for one company. The testimony of Gluck, who is charged with obtaining appropriate identifying documentation, regarding the information that Kahan had and did not have about Frank and his companies, is relevant to whether Kahan had a good faith basis to rely on Frank as a reference for Golden On Star Limited. Nor is such testimony duplicative, because Weinstein did not know the documentation that Kahan had on file for Frank's companies. Ex. A, 197:12-13; 200:7-19; 207:10-15.

We also note that Kahan has taken eight depositions to date, including two of witnesses in Ohio, and one of a person who had nothing to do with the transactions at issue, and has noticed a ninth deposition. Chase has taken only two depositions,[1] and the witness it seeks to depose, Gluck, works one block from Chase's counsel's offices. Accordingly, there is no undue burden in this deposition.

C.   **Production of the Kahan Form Should Be Compelled**

Kahan has declined to produce a blank copy of the Kahan Form on the grounds that it is irrelevant. Ex. C at 4, Response to Request 1. For the reasons explained above, the document is highly relevant to whether Kahan sold precious metals in good faith without notice of the fraud. Kahan has created and uses the Form to obtain identifying information from its customers. In this case, it elected not to obtain that information, and instead, attempts to support its good faith claim by relying on two letters that are most generously described as patently suspect on their face. Chase is entitled to see the type of customer identification information that Kahan collects on its Form, which it elected not to obtain in connection with its alleged sale of precious metals to Golden On Star Limited or Gold On Star LTD.

D.   **Conclusion**

For the foregoing reasons, Kahan should be compelled to produce Gluck for a deposition and to produce the Kahan Form, and Chase should be awarded the costs of this motion, including attorneys' fees.

                                Respectfully submitted,
                                /s/Andrea Likwornik Weiss
                                Andrea Likwornik Weiss

cc: Sheldon Eisenberger, Esq. (by ECF)

---

[1] In addition to Weinstein, Chase has deposed non-party Michael Riess, a consultant proffered by Kahan in its Rule 26(a) disclosures as a person with "[k]nowledge of compliance with Patriot Act by Kahan." Ex. D at 2. In its cross-claim against Chase, Kahan asserted its supposed compliance with the Patriot Act in connection with its receipt of the funds. Ex. E, ¶ 35.