LEVI LUBARSKY & FEIGENBAUM LLP
ATTORNEYS AT LAW
1185 AVENUE OF THE AMERICAS
17TH FLOOR
NEW YORK, NEW YORK 10036

TEL. (212) 308-6100
FAX (212) 308-8830
WWW.LLF-LAW.COM

April 4, 2011

*VIA ECF*
Honorable John Gleeson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: *TD Bank, N.A. v. JP Morgan Chase Bank, N.A., et al.*
          10-CV-2843 (JG) (ARL)

Dear Judge Gleeson:

      Pursuant to the Court's individual rules, JPMorgan Chase Bank, N.A. ("Chase") submits this letter in response to the letter of Max Kahan, Inc. ("Kahan") concerning its proposed motion to amend its answer and cross-claim ("Ltr."). As is explained below, the proposed amendments are meritless and futile. *See Cohen v. Singer*, 4 F. App'x. 38, 40, No. 00-7776, 2001 WL 138395 (2d Cir. Feb. 14, 2001) (motion to amend properly denied where proposed amendments are futile or without merit), citing *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

**I.**      **The Proposed Amendment to Add "Fraudulent Conduct" is Futile.**

      The elements of common law fraud in New York are: "(1) that [the defendant] made a misrepresentation (2) as to a material fact (3) which was false (4) and known to be false by [the defendant] (5) that was made for the purpose of inducing [the complaining party] to rely on it (6) that [the complaining party] rightfully did so rely (7) in ignorance of its falsity (8) to his injury." *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987). A complaint premised on fraud is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). The circumstances of the fraud must be alleged with particularity and the facts alleged must give rise to a "strong inference" of fraudulent intent. *Id.*

      Kahan's fraud theory is a Rube Goldberg-like contraption which claims that Chase employee Julia Fan schemed with Yang, who held a power of attorney on Yao's accounts but who purportedly owned the funds himself, to blame Kahan for fraudulent wire transfers that were supposedly initiated by Yao, by accusing Kahan of not acting in good faith with respect to its alleged sale of precious metals. Ltr. 1-2. Even if Kahan's bizarre theory were correct, Kahan could not state a fraud claim because it identifies no statement made by Chase to Kahan at all, let alone one made for the purpose of inducing Kahan's reliance, on which Kahan actually relied,

Hon. John Gleeson
April 4, 2011
Page 2

and which injured Kahan. Furthermore, Kahan cites no evidence that could support a particularized allegation that Fan engaged in such a scheme, or a strong inference of fraudulent intent. Because Kahan's proposed fraud claim could not withstand a Rule 12(b)(6) motion to dismiss, the amendment is futile. *See Schwasnick v. Fields*, No. 08-CV-4759, 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) ("if a claim could not survive a 12(b)(6) motion . . . a court is not abusing its discretion by denying leave to amend.").

Kahan's claim that Chase has fraudulently sought to "blame" Kahan for the loss also fails to state a plausible claim for relief under Rule 8, because, as this Court has already held, Kahan's lack of good faith is not even an element of Chase's claim. *See T.D. Bank, N. A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843 (JG)(ARL), 2010 WL 4038826, at *6 (E.D.N.Y. Oct. 14, 2010). Rather, the burden is on *Kahan* to prove as an affirmative defense that it received the funds in good faith, that it had no notice the funds were procured by fraud, and that it gave commensurate value in exchange for the money. *Id.* at 6.[1] Kahan concocts its "blame" theory based on what Chase may or may not have told the Secret Service, Ltr. at 1, but communications with the government are entirely irrelevant in this civil action. And in all events, Kahan's claim that there was no basis for communicating with the Secret Service about Kahan is ridiculous in light of the fact that Kahan received the stolen money.

II.     **The Proposed Amendment to Add Conversion Is Meritless.**

"[C]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. . . . Two key elements of conversion are (1) plaintiff's possessory right or interest in the property, and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *T.D. Bank*, 2010 WL 4038826, at *7 (internal quotation marks and citations omitted). Kahan identifies no facts that could support an allegation that Chase exercised dominion over the funds at any time after Kahan allegedly acquired a possessory interest in them (i.e., after it received the funds in exchange for the purported sale). Rather, pursuant to Orders of this Court, the *government* seized the funds from Kahan's TD bank account; the government later returned them to TD Bank; TD Bank then deposited them into the Court, where they remain. Accordingly, any claim asserted against Chase for conversion would be futile.

---

[1] The evidence produced by Kahan vitiates any claim of its purported good faith. The documentation Kahan received from the company to which it purportedly sold precious metals -- two letters on purported company letterhead -- is rife with indicia of fraud (*e.g.*, one letterhead denominates the purchasing company "Golden On Star Limited;" the other calls it "Gold On Star LTD;" the room number of the company's office is different on each letterhead; the street names and towns imprinted on the two letterheads are inconsistently spelled; the letters are undated and are not even addressed to Kahan). Kahan, in violation of its own procedures, did nothing to reconcile these numerous discrepancies, which, at the very least, put it on inquiry notice of the fraud. *See, e.g., Chen v. Geranium Dev. Corp.*, 243 A.D.2d 708, 709, 663 N.Y.S.2d 288, 288 (2d Dep't 1997) (status of good faith purchaser cannot be maintained by "one with knowledge of facts that would lead a reasonably prudent purchaser to make inquiries concerning such."). Furthermore, although Kahan has, in its cross-claim, asserted its compliance with the Patriot Act to support its good faith, its consultant on Patriot Act issues, whom Kahan proffered as a witness to its compliance in its Rule 26(a) disclosures, admitted that he could not identify the customer based on these documents.

Hon. John Gleeson
April 4, 2011
Page 3

### III. Kahan's Speculative Claim that Yao Himself Wired the Funds Is Futile.

Kahan seeks to add a claim asserting that the funds were not stolen because Yao himself purportedly wired them. Ltr. 1. That is pure speculation not supported by a scintilla of evidence. Because Kahan does not identify factual allegations that would be sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007), such an amendment would be futile.

First, Julia Fan reviewed bank surveillance photos of the imposter and immediately recognized that the imposter was *not* Yao. Fan also testified that she reviewed the fake identification that the imposter supplied to the branch employees who executed the wire, and that the person depicted therein was *not* Yao. Fan knew Yao, having spent several hours with him, including sharing a meal with him, when she visited China.

Second, contrary to Kahan's assertion, Ltr. 2-3, Fan's identification was not contradicted by the branch employees. Branch employees *believed*, at the time they executed the wires, that the imposter was Yao based on apparently authentic photo identification which appeared to match the identification on file with Chase for the real Yao. Sarah Kim, the branch manager who approved the wires, made clear that that belief changed after Fan alerted her to the fraud. Kim testified that she then re-examined the identification presented by the imposter and the identification on file and realized that the photos on the real and fake identification did not match exactly. Upon close examination, she realized that there was a difference in facial features, and that the clothing was different in the two photos, even though the fake passport was purportedly issued on the same date as the real passport. Kim herself reported the fraud internally.

Third, Chase has produced Yao's statement to the effect that he was not at the branch and did not transfer the funds. Kahan has not sought to depose Yao.

Kahan proffers only speculation in support of its claim: that Yao was in the United States in 2006,[2] so might have been in the United States in September 2009, and that perhaps Fan is mistaken. Ltr. 2. Kahan cannot state a claim for relief based on such speculation.

                    Respectfully submitted,

                    s/Andrea Likwornik Weiss
                    Andrea Likwornik Weiss

cc: Sheldon Eisenberger, Esq.
    (via ECF)

---

[2] For this allegation, Kahan relies on a copy of a passport that was used to open the HSBC account to which the funds were initially transferred. Ltr. 2. That identification is also fake. Contrary to Kahan's assertion, Ltr. 1, there is no evidence that Yao opened the HSBC Account.