UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| TD BANK, N.A., | : | |
| | : | Civil Action No. 10-CV-2843 (JG) (ARL) |
| Plaintiff, | : | |
| | : | |
| -against- | : | |
| | : | |
| | : | |
| JP MORGAN CHASE BANK, N.A. and | : | |
| MAX KAHAN, INC., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT MAX KAHAN, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR LEAVE TO FILE AMENDED ANSWER
<u>WITH AFFIRMATIVE DEFENSES AND CROSS-CLAIMS</u>**

Sheldon Eisenberger (SE-2021)
The Law Office of Sheldon Eisenberger
*Attorneys for Interpleader Defendant Max Kahan, Inc.*
30 Broad Street, 27th Floor
New York, New York 10004
(212) 422-3843

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. ii

BACKGROUND .................................................................................................2

   I.  THE PLEADINGS ......................................................................................2

   II.  THE COURT'S SCHEDULING ORDER ....................................................3

ARGUMENT.......................................................................................................4

   I.  THE SCHEDULING ORDER SHOULD BE MODIFIED TO ALLOW KAHAN TO FILE ITS PROPOSED AMENDED ANSWER .............................................................4

   II.  KAHAN'S MOTION TO AMEND SHOULD BE GRANTED PURSUANT TO FED. R. CIV. PRO. 15 ...............................................................................................9

      (i) KAHAN'S PROPOSED CONVERSION CLAIM IS NOT FUTILE .........................13

      (ii) KAHAN'S PROPOSED PUNITIVE DAMAGES CLAIM IS NOT FUTILE...........14

   III.  KAHAN'S MOTION IS FURTHER PROPER PURSUANT TO FED. R. CIV. PRO. 20 AND 21.......................................................................................................14

CONCLUSION ..................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

Blesedell v. Mobile Oil Co.,
 708 F.Supp. 1408 (S.D.N.Y. 1989) ................................................................14

Block v. First Blood Associates,
 988 F.2d 344 (2d Cir. 1993) ..........................................................................10

Colavito v. N.Y. Organ Donor Network, Inc.,
 8 N.Y.3d 43, 827 N.Y.S.2d 96 (2006) ...........................................................12

Estate of Ratcliff v. Pradera Realty Company,
 Civ. No. 05-10272, 2007 WL 3084977 (S.D.N.Y. Oct. 19, 2007) ...................3

Expoconsul Int'l v. A/E Sys., Inc.,
 145 F.R.D. 336 (S.D.N.Y. 1993) ....................................................................15

Exxon Shipping Co. v. Baker,
 554 U.S. 471 (2008) ........................................................................................13

Foman v. Davis,
 371 U.S. 178 (1982) .......................................................................................8, 9

Grant v. Citibank (South Dakota), N.A.,
 Civ. No. 10-2955, 2010 WL 5187754 (S.D.N.Y. Dec. 6, 2010) ...................10

Green v. Beer,
 Civ. No. 06-4156, 2009 WL 3401256 (S.D.N.Y. Oct. 22, 2009) ...................14

Holt v. Katy Industries, Inc.,
 71 F.R.D. 424 (S.D.N.Y. 1976) ........................................................................3

JPMorgan Chase Bank, N.A. v. IDW Group, LLC,
 Civ. No. 08-9116, 2009 WL 1357946 (S.D.N.Y. May 12, 2009) .....................9

Kassner v. 2nd Ave. Delicatessen Inc.,
 496 F.3d 229 (2d Cir. 2007) .............................................................................3

Kehr v. Yamaha Motor Corp., USA,
 596 F.Supp.2d 821 (S.DN.Y. 2008) ...........................................................14, 15

Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.,
 734 F.Supp. 1071 (S.D.N.Y. 1990) .................................................................11

Media Alliance, Inc. v. Mirch,
Civ. No. 09-659, 2010 WL 2557450 (N.D.N.Y. Jun. 24, 2010) ................................13

Middle Atlantic Utilities, Co. v. S.M. W. Development Corp.,
392 F.2d 380 (2d Cir. 1968) ................................................................11

Oliver Sch., Inc. v. Foley,
930 F.2d 248, 253 (2d Cir. 1991) ..........................................................9

Parker v. Columbia Pictures Indus.,
204 F.3d 326 (2d Cir. 2000) ................................................................11

Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,
748 F.2d 774, 783 (2d Cir.1984) .....................................................11, 12

Searson v. Concord Mortg. Corp.,
Civ. No. 07-3919, 2009 WL 3063316 (E.D.N.Y. September 24, 2009) ...............11

Serrano v. Greiner,
Civ. No. 00-9103, 2001 WL 856609 (S.D.N.Y. July 27, 2001) ......................9

Shiah Yih Industries Co., Ltd. v. Sitco Importing Co., Inc.,,
Civ. No. 96-0356, 1997 WL 304903 (S.D.N.Y. June 5, 1997) ......................11

State Farm Mutual Auto Ins. Co. v. CPT Med. Services, P.C.,
246 F.R.D. 143 (E.D.N.Y. 2007)..........................................................15

T & N PLC v. Fred S. James & Co. of New York, Inc.,
Civ. No. 89-7688, 1991 WL 190581 (S.D.N.Y. Sept. 16, 1991) ...................13

T.D. Bank, N.A v. JP Morgan Chase Bank, N.A.,
2010 WL 4038826 (E.D.N.Y. October 14, 2010) ..................................12

UMG Recrodings, Inc. v. Lindor,
Civ. No. 05-1095, 2006 WL 3335048 (E.D.N.Y. November 9, 2006) ...........13

United Mine Workers of America v. Gibbs,
383 U.S. 715 (1966)........................................................................14

**Statutes**

Fed. R. Civ. Pro. 15(a) .....................................................................10

Fed. R. Civ. Pro. 20 .....................................................................13, 14

Fed. R. Civ. Pro. 21 .........................................................................................................14

**Treatises**

3 Moore, Federal Practice (2d ed. 1948), §§15.08, 15.10 ................................................9

Interpleader defendant Max Kahan, Inc. ("Kahan") respectfully submits this memorandum of law in support of its motion pursuant to Rules 15(a), 16(b), 20 and 21 of the Federal Rules of Civil Procedure, for leave to amend its answer to the cross-claim of   JPMorgan Chase Bank, N.A. ("Chase") (i) to add a cross-claim for declaratory judgment that Kahan is the rightful owner of the interpleaded funds because it is a bona fide seller for value without knowledge, (ii) to add a cross-claim for declaratory judgment that Kahan is the rightful owner of the funds because the funds were never fraudulently transferred, (iii) to add Chun Xaio Fan a/k/a Julia Fan ("Fan"), Vice President of Chase and "relationship manager" for the account of Xiuqing Yao ("Yao"), as an additional defendant on the cross-claims, individually and as an employee and officer of Chase, (iv) to add a cross-claim against Chase and Fan for conversion, and (v) to add a claim for an award of punitive damages.   A copy of the proposed amended answer to Chase's cross-claims with affirmative defenses and cross-claims is annexed to the accompanying declaration of Sheldon Eisenberger, Esq. (Eisenberger Decl.") as Exhibit A.

## BACKGROUND

### I.    The Pleadings

TD Bank, N.A. ("TD Bank") filed the instant Complaint in Interpleader on June 21, 2010 claiming no title or interest in the funds at issue in this action and seeking permission to deposit the funds into the Court.  Thereafter, on August 10, 2010, Chase filed an Answer of Interpleader, claiming ownership of the Interpleaded Funds, and asserting various cross-claims against Max Kahan, Inc. (alleging, *inter alia*, that the funds from the account of its customer Yao were fraudulently withdrawn and transferred from his Chase account and ultimately transferred to Kahan's account at TD Bank, via HSBC Bank, Hong Kong).   Chase asserted cross-claims against Kahan for money had and received, payment by mistake, unjust enrichment and

conversion.   On August 10, 2010, Kahan filed its Answer with Cross-Claim seeking a declaratory judgment based on its receipt of the funds as a bona fide seller for value without knowledge.   Thereafter, on October 28, 2010, Kahan filed its Answer of Defendant Max Kahan, Inc. to JPMorgan Chase Bank, N.A.'s Answer to Interpleaded Funds and Cross-Claims Against Max Kahan, Inc. generally denying liability and asserting affirmative defenses to the cross-claims.   It is this answer that Kahan seeks to amend.

## II.   The Court's Scheduling Order

After the commencement of the instant action, the Court entered a scheduling order on November 9, 2010 providing for a deadline for joining additional parties and for amending the pleadings of January 10, 2011.   Throughout this action Kahan has been diligently pursuing its claims and responding to Chase's discovery requests.   Chase on the other hand, has been delinquent in its production of documents from the outset of these proceedings.   Chase's initial production was not received until December 22, 2010, over two weeks after it was due,[1] and its production has continued on a rolling basis ever since.   To this day, Chase has not completed its production.[2]

Since January 10, 2011, Chase has produced approximately 2,500 pages of documents (two thirds of its total production), has provided two tapes of audio recordings of Fan's telephone conversations which should have been produced in December 2010 (moreover Chase continues to withhold tapes of additional relevant conversations). Numerous depositions have been taken by Kahan, including the depositions of Fan and several investigators for Chase who participated in the investigation conducted by Chase following the withdrawal and transfer of the funds from the Yao account.

---

[1] The majority of these initial documents were Kahan's own bank statements and duplicates and triplicates of other documents.

[2] Even as late as last week, Chase produced approximatley 150 pages on April 5, 2011.

## ARGUMENT

**I.    The Scheduling Order Should be Modified to Allow Kahan to File Its Proposed Amended Answer**

Although the scheduling order in this action set a deadline of January 10, 2011 for joining additional parties and/or for amending the pleadings, good cause now exists to modify the order and permit Kahan to file its proposed amended answer.

Whether "good cause" exists, turns primarily on the diligence of the moving party in seeking to meet the deadline in the Court's scheduling order. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243-4 (2d Cir. 2007); see also Estate of Ratcliff v. Pradera Realty Company, Civ. No. 05-10272, 2007 WL 3084977 (S.D.N.Y. Oct. 19, 2007) (good cause requirement satisfied where proposed amendment based on evidence recently obtained during depositions and records subsequently obtained in the course of discovery); Holt v. Katy Industries, Inc., 71 F.R.D. 424, 427 (S.D.N.Y. 1976) (motion to amend granted where many of the proposed changes were based on information developed in pre-trial discovery.)

From the outset, Kahan has been diligent in attempting to obtain all discovery due from Chase; although Chase has been less than forthcoming in complying with its discovery obligations.   The instant proposed amendment is based solely on information acquired only recently from documents received from Chase and from deposition testimony of the Chase employees and its agents who were recently examined.   All of the proposed amendments relate to the fact that the withdrawal and transfer of the funds from the Yao account was not an act of fraud – that the funds were never stolen from Chase and/or Yao – and that Chase and its agents and employees are aware of these facts. These issues are not new to Chase and were raised in Kahan's affirmative defenses to Chase's cross-claims asserting Chase's unclean hands and culpable conduct and negligent and grossly negligent conduct.   Although Kahan had always

suspected that the transfers were not fraudulent, the facts to support the affirmative claims were at all times in Chase's exclusive possession and Kahan was unable to support its suspicion until recently.

In addition, the new information reflects that, alternatively, the funds in Yao's Chase account really belonged to Yang, that Fan and Chase knew this, that Fan acted as a gatekeeper for Yang's fund, that Yao "stole" the funds from Yang, and Chase and Fan tried to cover up their negligence and gross negligence by concocting the fiction of an imposter having masqueraded as the account holder and then blaming Kahan for receiving "stolen" funds.

As more fully set forth in the accompanying declaration of Sheldon Eisenberger, dated April 15, 2011, the facts that have now been disclosed through discovery reveal that:

(i)    Three different sets of identifications of Xiuqing Yao have been produced by Chase in this action, all of which contain identical information relating to Yao's birth date and other identifying numbers.

(ii)    The first set of identification documents was a passport and national identification card from 2006 that were faxed to Fan and subsequently scanned into Chase's computer system. It was on the basis of these documents alone that Fan/ Chase opened Yao's account. At the time that the account was opened, no one at Chase (including Fan) had ever met Yao in person, had ever spoken to Yao (even on the phone), and had never received or examined any original documents, only faxed copies. The portion of the faxed passport did not include the visa section. Fan confirmed at her deposition that at the time the account was opened, no due diligence was done with respect to Yao, and that the account was opened solely based on the introduction purportedly provided by Chase's customer, Wenru Yang ("Yang").

(iii)    The second set of identification documents was an original passport and national identification card presented to the Flushing branch of Chase by the individual who requested the transfers. According to the documents produced by Chase in discovery,

<div align="center">REDACTED</div>

These original documents were

examined by three different Chase employees at the Flushing branch who compared them to the identifications in Chase's computer and compared them to the person who presented them at the branch. All three employees concluded that the documents matched and that the person was genuine. The passport that was presented was partially copied, but once again, the visa section of the passport was not copied.

(iv)    The third set of identification documents was provided to HSBC, Hong Kong, when the account of Golden On Star was opened by Yao. It was this account to which the monies from the Chase account were transferred. The first wire was made on September 15, 2009 in the amount of $1,900,000 US dollars. The second transfer was made three days later on September 18, 2009 in the amount of $190,000 US dollars. The identification documents presented to HSBC, Hong Kong, included a national identification card and a passport and did include a copy of the visa section. That portion of the passport (the visa section) showed that during the time period in which the Chase account was opened, Yao was in the United States. It further showed that Yao was in Hong Kong in 2009 at the time that the Golden On Star account was opened. In addition, Fan testified that she knew that Yao had accounts in Hong Kong, although she testified that she could not remember if Yao had an account at HSBC in Hong Kong. However, she did testify that Yao told her that he would go to Hong Kong to make wire transfers to his Chase account, and the records produced by Chase in discovery show that one of the accounts from which funds were wired to Yao's Chase account, was an account at HSBC, Hong Kong. Moreover, Chase's own Hong Kong investigator Vicky Lau ("Lau") confirmed that HSBC will not open an account without a person appearing at the bank and presenting original identifications.

(v)     Based on the recent testimony of Chase personnel, including Frank T. Lorello ("Lorello"), who is the Vice President of J.P. Morgan Chase Global Security and Investigations section, it is clear that initially the sole basis for Chase's determination that the funds were stolen was the claim by Fan that the person in photographs taken from the less-than-clear branch video of the individual who appeared at the Flushing branch was not Yao. Fan however only met Yao (or a person representing himself to be Yao) once in her life. Fan testified that on a visit to China in 2007, she met Yao and they had a meal together. She estimated that they were together for approximately three hours, although she could not remember whether it was lunch or dinner. Of course Fan's contention that it was not the Yao she knew who went to the Flushing branch (on seemingly three or four separate occasions) is contradicted by the fact that three Chase employees – including the branch manager - who examined the identification presented by the Yao at the Flushing branch concluded that the individual who appeared at the branch matched the identification in Chase's computer.

(vi)     The recent testimony given by Fan at her deposition is simply not credible. Moreover her repeated responses that she "did not recall" revealed a pattern of purposeful evasiveness. For example, when Fan was shown the document that purported to give Yang a Power of Attorney over Yao's account, she testified that she did not know the notary public, Jauna Videla, the Chase employee who notarized Yao's and Yang's signature on the power of attorney form on June 23, 2008.   She testified that she thought she might know a " Jauna" but she said she wasn't sure – and that she would have to check. Jauna Videla on the other hand testified that she has known Fan well for five or six years,  that she works on the same floor as Fan and meets with Fan and the team of relationship managers every Wednesday.   Videla further testified that she has never notarized a signature without seeing the person personally sign the document she is notarizing. This testimony is particularly significant because it refutes the documents proffered by Chase – which they claim to have been signed by Yao and Yang (although they are in Chinese and are not properly authenticated) that state that Yao has never been in the United States. Chase has refused to produce a translation of the Yang and/or Yao "affidavits" (on the truly preposterous grounds they are somehow attorney work product), and has similarly provided no pictures of Yao and Yang at the time the affidavits were allegedly prepared. Even more significantly, Chase originally identified Yao and Yang in its Rule 26 disclosures as individuals likely to have discoverable information.   Initially, Chase advised that it intended to depose Yao and Yang, who are located in China and British Columbia, respectively. More recently however, Chase advised that it no longer intends to depose either individual and will call them at trial only if they happen to be in the United States at the time. Of course these individuals (whoever they may be, are uniquely under the control of Chase, and remain beyond the jurisdiction). Chase's reversal in position further substantiates Kahan's position that Chase knows that the Yao took the funds. We have attempted to contact Yao and Yang through their counsel but they have declined to speak or meet with us.

(vii)    The claim that Yao has never been in the United States is also refuted by the visa section of the passport presented to HSBC, Hong Kong, to open the Golden On Star account. While Chase unilaterally takes the position that the HSBC passport is a forgery, it makes no sense that in creating a fake passport someone would put a phony US Immigration stamp (which appears entirely authentic) in the false passport.

(viii)   Records from HSBC reveal that Golden On Star was incorporated by Yao in August 2009 and audio tapes received from Fan confirm that Fan never asked Yao whether he owned Golden On Star. Similarly, Chase's investigator in Hong Kong never asked Yao if he owned Golden On Star.

(ix)   Documents produced show that at the time that the money was transferred, Fan initially told bank personnel that the power of attorney on the account was held by Yao's sister, and that Yang and Yao were close family friends. Of course none of that was true. Nevertheless, in a memo produced in discovery, Sarah Kim ("Kim"), the Manager of the Flushing branch, explained


REDACTED


(x)   Further, it had never been previously revealed to Kahan, until it was recently discovered in a recent deposition of Frank Lorello, that the alleged "imposter" Yao appeared at the Flushing branch several times prior to requesting the transfer. Chase claims that it has no video or photographs of Yao's other (prior) appearances at the branch, or when he withdrew funds from and ATM machine.

(xi)   Chase bank statements for the Yao account show that the source of the funds was not Yao, but rather three corporations believed to be controlled by Yang. Fan never made any inquiry of Yang or Yao as to who controlled these accounts, why they were making deposits into Yao's U.S. account at Chase – and most significantly – what was the source of the money being wired in.

(xii)   Fan testified at her deposition that no due diligence was conducted either by her or by Chase regarding Yao, either when the account was opened or thereafter. Documents produced in discovery appear to indicate that Xiuqing Yao is a ranking official in an association supporting The People's Liberation Army ("PLA"). The fact that Yao is a Chinese national holding U.S. dollar accounts and that he is a member of the PLA should have triggered inquiries by Chase as to the source of the funds under the relevant provisions of the Patriot Act and the Financial Crimes Enforcement Network (FinCEN).

(xiii)   Chase bank records reveal that the funds reimbursed by Chase to Yao's account were immediately transferred from Yao's account to an account of Yang.

(xiv)   Audio recordings reveal that upon Fan's discovering that the funds were transferred from Yao's account, Fan appears to first call Yang, not Yao.

In addition the recordings appear to reflect that Yang is upset about the transfers though Yao seems unconcerned.

(xv)   Documents reveal that at one time Yang maintained several accounts at Chase and that he held a number of other accounts, though his name was spelled in different variations including Wenrui Yang, Wen-Rui Yang and Yang Wenrui.

(xvi)   Recently received documents reflect that

REDACTED

(xvii)   Documents recently received in discovery reflect that Chase's investigator, Ann Cullen,

REDACTED

(xviii)   Discovery has also revealed that Chase made false representations to the government which were incorporated in the government's Verified Complaint In Rem. For example, Chase falsely stated that prior to opening the Chase account Fan met personally with Yao in China; however, Fan testified that she first met Yao in 2007, well after the account was opened.

See Eisenberger Decl. ¶¶ 10, 13.

## II.   Kahan's Motion To Amend Should Be Granted Pursuant to Fed. R. Civ. Pro. 15

Rule 15(a) provides in pertinent part, that where a party seeks to amend after a responsive pleading has been filed, that party "may amend [his] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. Pro. 15(a). In Foman v. Davis, 371 U.S. 178, 182 (1982) the U.S. Supreme Court addressed the standard for permitting a motion to amend brought pursuant to Rule 15. Justice Goldberg, writing for the Court, explained: "If the underlying facts or circumstances relied upon

by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."

As the Court in Serrano v. Greiner, Civ. No. 00-9103, 2001 WL 856609 (S.D.N.Y. July 27, 2001) explained:

> In the Second Circuit the usual practice is to grant leave to amend absent some compelling reason to the contrary. Although the decision whether to grant leave to amend is clearly committed to the sound discretion of the district court, refusal to grant leave to amend must be based on a valid ground. Oliver Sch., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991) (citation omitted). In general, leave to amend at least once should be granted as a matter of course. See Id. Moreover, "it is well-established that a district court should normally permit amendment absent futility, undue delay, bad faith or dilatory motive, or undue prejudice" and none of those factors are present at bar. Masotto v. United States, 2000 U.S. App. LEXIS 298, *6; 205 F.3d 1323 (Table), [*4] 2000 WL 19096, at *2 (2d Cir. 2000).

Accord, JPMorgan Chase Bank, N.A. v. IDW Group, LLC, Civ. No. 08-9116, 2009 WL 1357946 (S.D.N.Y. May 12, 2009). Also see generally, 3 Moore, Federal Practice (2d ed. 1948), §§15.08, 15.10.

Axiomatically, there can be no assertion that Kahan's motion for leave to amend is somehow prosecuted in "bad faith" since the present motion is necessitated by the need of Kahan's to conform its pleadings to the evidence (previously unknown) that has been developed through the depositions of Chase's employees and agents, and in particular through the examination of Chase Vice President, Julia Fan. For example, as previously enumerated, Kahan did not know prior to deposing Fan that she had been opened the Yao account without (1) ever meeting Yao personally, (2) without ever receiving any original identification (she merely accepted faxed copies of his purported passport and identity card), (3) without doing virtually any due diligence as to the source of the monies being deposited into his account (3) without checking or otherwise inquiring into Yao's businesses, source of income, or his relationship to the companies who wired money into his account (4) without checking in any way on  Yao's

background, business affiliations or seeking any explanation as to how it was that a Chinese national had multiple U.S. dollar accounts with millions of dollars in them.[3]

As to the second prong of the Rule 15 inquiry – would granting the instant motion to amend somehow prejudice the other party – it is quite clear that Chase will suffer no prejudice from Kahan's proposed amendment. In determining whether amendments are potentially prejudicial, courts consider whether the new claim would: (a) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (b) significantly delay the resolution of the dispute, or (c) prevent the plaintiff from bringing a timely action in another jurisdiction. Grant v. Citibank (South Dakota), N.A., Civ. No. 10-2955, 2010 WL 5187754 at *6 (S.D.N.Y. Dec. 6, 2010).  see also Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993).

The amendments presently proposed arise from the same set of operative facts as the original cross-claim and from the same events originally pleaded, all of which relate to the purported fraudulent transfers from Yao's account. Therefore, the amendment would not result in the need for significant additional time for discovery beyond what has already been produced, is currently outstanding, or what was previously contemplated in the litigation prior to the proposed amendment. This is especially true in light of the fact that Chase and Fan were already required to produce all relevant documents in their possession relating to the purported fraudulent transactions and they have supposedly done so.

---

[3] In this same regard, and in order to provide some measure of the lengths that Fan was willing to go to proactively) "accommodate" her customers and to facilitate their ability to open and operate accounts "under the radar" (and of course she had a compelling incentive to do so since her bonus was directly tied to the amount of money and accounts she could attract for the Bank), when Yang asked her to transfer $300,000 for Yao's account to his, she advised strongly against it. In an e-mail to Yang, Fan wrote: "About two month ago you asked me to transfer 300k from Yao's account to your own's [sic] account at Chase. Your Account balance is less than 1mm then. So I called you asking you better to make the transfer when you start using the funds, **I explained to you that if you have over 1mm sitting in your account, we have internal procedure to make ddr report (due diligence report), some forms we have to complete and we need a lot of info about the account owner, ....etc, so you oked not the make the transfer of 300k right away to your own account at Chase.**" (emphasis supplied)

Kahan has not delayed in seeking to amend its answer, cross-claims or affirmative defenses, since it has only recently received the information which has triggered it need to conform its pleadings to the information and evidence that has been adduced through discovery. As stated previously, the proposed amendments are based solely on discovery recently obtained from Chase. Accordingly, Kahan has not unduly delayed the filing of this motion. Moreover, as the Court observed in Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc., 734 F. Supp. 1071, 1078-79 (S.D.N.Y. 1990): "However, mere delay alone is an insufficient basis to deny a motion to amend absent a concomitant showing of undue prejudice or bad faith." Also see, Middle Atlantic Utilities, Co. v. S.M. W. Development Corp., 392 F.2d 380, 384 (2d Cir. 1968) ("delay itself is not enough to deny" the motion to amend.)[4]

Finally, the amendment of its affirmative defenses and/or the assertion of its cross claims are in no way futile. In examining this prong, courts in the Second Circuit apply a Rule 12(b)(6) standard of review, so that dismissal is warranted only if the allegations in the amended pleading fail to state a claim. See Searson v. Concord Mortg. Corp., Civ. No. 07-3919, 2009 WL 3063316 at * 2 (E.D.N.Y. Sept. 24, 2009); see also Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000). Thus, in determining whether a proposed amendment would be futile, the claims must be construed in a light most favorable to the party making the claim and all factual allegations must be deemed true and all reasonable inferences dawn in favor of the amendment. See Foman, Supra, 371 U.S. at 182. "To overcome objections of futility, the plaintiff must merely show that it has 'at least colorable grounds for relief.' " Shiah Yih Industries Co., Ltd. v. Sitco Importing Co., Inc., Civ. No. 96-0356, 1997 WL 304903 at *4 (S.D.N.Y. June 5, 1997) (quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 783

---

[4] Ironically, it was Chase who delayed asserting its claims to the funds and instead chose to sit on the sidelines and have the government do its bidding during the government's forfeiture action.

(2d Cir.1984)).   Because each of the claims Kahan seeks to add are generously supported by factual allegations, they meet, and indeed surpass, the Rule 12(b)(6) standard of review. Accordingly, there is no basis to deny leave to amend on this ground.

**(i) Kahan's Proposed Conversion Claim is Not Futile**

In the letter from Chase's counsel, dated April 4, 2011, the argument is advanced that permission to amend Kahan's pleadings to assert a cause of action for conversion should be denied because it is "futile." (Weiss letter at. p 3) Counsel's arguments are predicated on the contention that: "Kahan identifies no facts that could support an allegation that Chase exercised dominion over the funds at any time after Kahan allegedly acquired a possessory interest in them (i.e., after it received the funds in exchange for the purported sale)."

However as this Court observed in its decision of October 14, 2011 (T.D. Bank, N.A v. JP Morgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 109471, *31 [E.D.N.Y. 2011]), "'[The] [t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property **or interference with it, in derogation of plaintiff's rights**.' *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50, 860 N.E.2d 713, 827 N.Y.S.2d 96 (2006)." (emphasis supplied)

Kahan does not argue that Chase actually (physically) exercised dominion over the moneys at issue, but rather Kahan argues, that Chase is liable for conversion because its conduct rises to the level of actionable "interference" with Kahan's right to dominion and control of its property and funds.  Accordingly, Chase's contention that under every circumstance a cause of action for conversion would be futile, is misplaced.

**(ii) Kahan's Proposed Punitive Damages Claim Is Not Futile**

Punitive damages are recoverable for conduct that is outrageous, owing to gross negligence, wilful, wanton, and recklessly indifferent to the rights of others, or behavior even more deplorable. See <u>Media Alliance, Inc. v. Mirch</u>, Civ. No. 09-659, 2010 WL 2557450 (N.D.N.Y. Jun. 24, 2010), citing <u>Exxon Shipping Co. v. Baker</u>, --- U.S. ----, 128 S.Ct. 2605, 2621, 171 L.Ed.2d 570 (2008) "(noting the availability of punitive damages for a defendant's conduct that is outrageous, owing to gross negligence, wilful, wanton, and recklessly indifferent to the rights of others, or behavior even more deplorable)" <u>Id.</u> at * 5.

Chase's actions, including its contacting the United States Secret Service with complete abandon, and instigating an investigation of Kahan – all the while knowing full well that there was no indication of wronging on the part of Kahan and that Chase, Fan, Yao and Yang were the true culprits support a recovery for punitive damages were so outrageous as to warrant punitive damages. In addition, as stated previously, Chase's false representations to the government which statement were incorporated in the government's Verified Complaint In Rem supporting Kahan's recovery of punitive damage.

Kahan is similarly entitled to add affirmative defenses. <u>T & N PLC v. Fred S. James & Co. of New York, Inc.</u>, Civ. No. 89-7688, 1991 WL 190581 (S.D.N.Y. Sept. 16, 1991) (granting amendment to add 19 affirmative defenses); <u>UMG Recordings, Inc. v. Lindor</u>, Civ. No. 05-1095, 2006 WL 3335048 (E.D.N.Y. Nov. 9, 2006).

**III.    Kahan's Motion is Further Proper Pursuant to Fed. R. Civ. Pro. 20 and 21**

In addition, Kahan's motion to add Fan as a party is proper pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure, which governs permissive joinder of additional parties and non joinder of parties. Rule 20 provides that defendants may be joined if "(A) any right to

relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. Pro. 20(a)(2).  Rule 21 provides that "On motion or on its own, the court may at any time, on just terms, add or drop a party...." Fed. R. Civ. Pro. 21.

"The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes thereby preventing multiple lawsuits." Blesedell v. Mobile Oil Co., 708 F.Supp. 1408, 1421 (S.D.N.Y. 1989). The Supreme Court has adopted this policy and stated that "under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with the fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966).

Courts in this Circuit have interpreted the phrase "same transaction" to encompass "all logically related claims." Green v. Beer, Civ. No. 06-4156, 2009 WL 3401256 (S.D.N.Y. Oct. 22, 2009) citing Blesedell, Id. at 1421.  Here, the claims against Fan in the amended cross claim easily satisfy that standard since they assert liability based upon the same purported fraudulent transfers from Yao's account and Chase's actions with respect thereto.

The rule further requires that the proposed claims present common questions of law and fact and does not require "that all questions of law and fact be *identical*" but rather provides for joinder "as long as there is any question of fact common to all." (citation omitted) (emphasis in original)  See Kehr v. Yamaha Motor Corp., USA, 596 F.Supp.2d 821, 827 (S.DN.Y. 2008). At the core of Chase's cross-claims against Kahan and Kahan's affirmative defenses is the question whether the transfers from Yao's account to the HSBC account were fraudulent. Related to and correlated to that central question are numerous other questions common to both

Chase and Fan relating to the transfers including: (1) whether the transfers were authorized by Yao, (2) whether the funds were transferred to Yao at HSBC Bank, (3) whether Chase knew its client authorized the transfers, (4) what Chase did or didn't do to protect Yao's funds prior to and after the transfers, and (5) whether Chase had unclean hands with respect to the transfers.   Here, the factual underpinnings of the proposed amendment to assert claims against Fan are identical to those already posed in this action.

Finally, permitting the joinder of Fan in this action would further judicial economy and the efficiency since the document discovery and depositions in the pretrial phase are essentially identical, and the witnesses and evidence at trial would be the same. Kehr, 596 F.Supp.2d at 828 (substantial overlap among the witnesses and documentary evidence used at trial in support of each Plaintiff group's claims warrants joinder); see also Green v. Beer, Supra at * 9.   The proposed amendment would also avoid the necessity of Kahan initiating a parallel lawsuit against Fan in which the claims and evidence would be the same.   The Court "has a substantial interest in adjudicating the entire dispute in one action." State Farm Mutual Auto Ins. Co. v. CPT Med. Services, P.C., 246 F.R.D. 143, 149 (E.D.N.Y. 2007) (allowing amendment to add 38 new defendants would "buttress judicial economy" and plaintiff should not bear the burden of prosecuting two separate cases with identical factual predicates"); see also Expoconsul Int'l v. A/E Sys., Inc., 145 F.R.D. 336, 338-39 (S.D.N.Y. 1993) (granting motion to add four new defendants, despite the case having been pending for five years and over 5,600 pages of deposition testimony taken where the amendment would not add significantly to the issues in the case or the discovery necessary before the case could proceed to trial.)

## CONCLUSION

For the forgoing reasons, Kahan's motion to amend should be granted in its entirely.

Dated: April 15, 2011

<div style="margin-left: 40%;">

Respectfully submitted,

THE LAW OFFICE OF SHELDON EISENBERGER

BY:      /s/ Sheldon Eisenberge
SHELDON EISENBERGER (SE-2021)
Attorneys for Interpleader Defendant
Max Kahan, Inc.
30 Broad Street, 27th Floor
New York, New York 10004
(212) 422-3843

</div>