| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------------X<br>                                                              :<br>T.D. BANK, N.A.,                                            :<br>                                                              :<br>                            Plaintiff,            :<br>                                                                :<br>      -against-                                       :<br>                                                                :<br>JP MORGAN CHASE BANK, N.A.             :<br>and MAX KAHAN, INC.,                           :<br>                                                               :<br>                            Defendants.        :<br>-----------------------------------------------------------------X | ONLINE PUBLICATION ONLY<br><br><br>MEMORANDUM<br>AND ORDER<br><br><br>10-CV-2843 (JG) (ARL) |

A P P E A R A N C E S:

    LEVI LUBARSKY & FEIGENBAUM LLP
        1185 Avenue of the Americas, 17th Floor
        New York, New York 10036
    By:   Andrea Likwornik Weiss
           Andre Castaybert
    *Attorneys for Defendant JP Morgan Chase, N.A.*

    THE LAW OFFICE OF SHELDON EISENBERGER
        30 Broad Street
        New York, New York 10004
    By:   Sheldon Eisenberger
    *Attorneys for Defendant Max Kahan, Inc.*

JOHN GLEESON, United States District Judge:

        TD Bank, N.A. ("TD Bank") commenced this interpleader action on June 21, 2010 against defendants Max Kahan, Inc. ("Kahan") and JPMorgan Chase Bank, N.A. ("Chase"), asserting that it was in possession of $2,089,000.00 in which it had no interest, but to which Kahan and Chase asserted competing claims. TD Bank alleged that it could not determine which of the defendants' claims was superior, and it therefore sought leave to deposit the funds with the Clerk of the Court and requested that it be dismissed from the action and relieved of all liability

relating to the funds.[1]  On August 10, 2010, Kahan and Chase filed their respective answers to the interpleader complaint in which they asserted cross-claims against each other.  On October 15, 2010 and October 28, 2010, respectively, Chase and Kahan filed answers to one another's cross-claims.  Kahan now seeks leave to amend its answer to Chase's cross-claims to add new claims against Chase and to add a Chase employee, Chun Xaio Fan (also known as Julia Fan), as a defendant to one of its cross-claims.  For the reasons stated below, Kahan's motion for leave to amend is granted in part and denied in part.

## BACKGROUND

A.  *Factual and Procedural Background*

Familiarity with the facts of this case is assumed.  *See T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843 (JG) (ARL), 2010 WL 4038826 (E.D.N.Y. Oct. 14, 2010) (denying Kahan's motion to dismiss Chase's cross-claims).  I recite here only those facts directly relevant to the motion presently before me.  Prior to the commencement of this action, on October 28, 2009, the United States initiated an *in rem* civil forfeiture action against the $2.089 million at issue in this case, which at the time was being held in a TD Bank account in Kahan's name.  *See* Complaint, *United States v. TD Bank Account No. 7920060725*, No. 09-CV-4663 (JG) (E.D.N.Y. Oct. 28, 2009), ECF No. 1.  The government alleged that Xiuging Yao had opened an account at Chase in June 2006 to which he was the sole signatory, but over which Yao's business partner Wenru Yang was given power of attorney.  Fan was the Chase account manager for Yao's account.  According to the government's complaint, in September 2009, an unknown individual made multiple visits to a Flushing branch of Chase and identified himself as

---

[1] On August 8, 2010, TD Bank was granted leave to deposit $2.089 million plus interest in the registry of the Court, and on November 10, 2010, TD Bank was dismissed from the case.

Yao. He presented various forms of photo identification, which were later determined to be counterfeit. The imposter requested that a total of $2.09 million in United States currency be wire transferred from Yao's Chase account to an HSBC account in Hong Kong held in the name of Golden On Star Limited. Shortly after the requested transfers had been completed, a total of $2.089 million was transferred from the HSBC account into Kahan's TD Bank account. Fan subsequently became aware of the activity involving Yao's account, determined that the counterfeit identification documents were not authentic, and confirmed that neither Yao nor Yang had completed the transactions.

On the basis of the government's complaint, I issued a preliminary order of forfeiture, authorizing the United States Secret Service to seize the $2.089 million from Kahan's TD Bank account. *See* Summons and Warrant for arrest of Articles in Rem, *United States v. TD Bank Account No. 7920060725*, 09-CV-4663 (JG) (E.D.N.Y. Oct. 28, 2009), ECF No. 2. On April 15, 2010, the government informed the Court that it intended to abandon the forfeiture action, and so on April 29, 2010, I issued an order dismissing the government's complaint, vacating the seizure warrant, and directing the Secret Service to return the funds and accrued interest to TD Bank for deposit into Kahan's account. *See* Order Dismissing Case, *United States v. TD Bank Account No. 7920060725*, 09-CV-4663 (JG) (E.D.N.Y. April 29, 2010), ECF No. 19.

TD Bank then commenced this action. According to its complaint, in October 2009, shortly before the United States commenced its *in rem* forfeiture action, Chase informed TD Bank that the funds were directly traceable to money stolen from the account of a Chase customer and should therefore be remitted to Chase. Following dismissal of the forfeiture action, Chase sent a second letter to TD Bank on May 3, 2010 reiterating its claim to the funds.

3

Meanwhile, on April 29, 2010, the day the government's forfeiture action was dismissed, Kahan wrote to TD Bank demanding that the money be turned over to it.

In its answer to TD Bank's interpleader complaint, Chase alleged that the funds in Kahan's TD Bank account were procured through a fraudulent bank scheme, and that Chase is therefore entitled to their return. Chase asserts four claims against Kahan, for money had and received, payment by mistake, unjust enrichment, and conversion. Chase seeks, inter alia, receipt of the interpleaded funds and attorneys' fees, costs and disbursements.[2] In its August 10, 2010 answer to TD Bank's complaint, Kahan asserted a single claim against Chase, seeking a declaration that it is the true owner of the funds plus an award of attorneys' fees, costs and disbursements. Kahan also alleged that the funds were placed in its TD Bank account in connection with a bona fide sale of gold and platinum by Kahan to Golden On Star Limited, that Kahan had no knowledge that the funds originated in Yao's Chase account, and that Chase acted with gross negligence in permitting the transfers out of Yao's account. On October 28, 2010, Kahan filed a second pleading, an answer to Chase's claim to the interpleaded funds and to Chase's cross-claims against Kahan. In the October 28 pleading, Kahan again alleged that any loss to Chase resulted from its own negligence and that Kahan received the funds for value and in good faith. Kahan did not admit any of Chase's allegations pertaining to the alleged underlying fraud.

B.    *The Proposed Amended Pleading*

Kahan now seeks leave to amend its October 28 pleading (1) to assert two cross-claims against Chase for a declaration that Kahan is the rightful owner of the funds because (a) it

---

[2] On August 20, 2010, Kahan filed a motion for judgment on the pleadings seeking to dismiss all of Chase's cross-claims. The motion was denied on October 14, 2010. *T.D. Bank, N.A.*, 2010 WL 4038826.

is a bona fide seller for value, and (b) the funds were never fraudulently transferred; (2) to assert a cross-claim against Chase for conversion; (3) to name Fan as a defendant to the claim for conversion; (4) to plead an affirmative defense that the funds were not stolen[3]; and (5) to demand an award of punitive damages of $5 million each from Chase and from Fan. In support of its proposed additional claims and defense, Kahan seeks to add a number of allegations to those made in its August 10 and October 28 pleadings. Kahan has submitted a proposed amended pleading, ECF No. 72-2, which alleges that Fan was introduced to Yao by Yang, a long-term client of Chase. It further alleges that when Yao opened his Chase account in June 2006, Fan performed no due diligence regarding Yang, Yao or the funds placed in Yao's account, and that Chase failed to comply with the Patriot Act, 31 U.S.C. §§ 5311 *et seq.*, in receiving those funds.

According to the proposed amended pleading, the funds placed in Yao's Chase account belonged to Yang, and Yao later stole them from his own account by initiating the September 2009 transfers into the Golden On Star Limited HSBC account, which Yao controlled. Although the proposed amended pleading does not explain how Chase and Fan's alleged misconduct in opening Yao's account is connected to the transfer of funds out of the account, Kahan maintains that the so-called theft by Yao in 2009 was made possible by the alleged failure to follow banking rules and regulations in 2006. Kahan posits that in an effort to cover up their 2006 wrongdoing, Chase, Fan, and Yang conspired to invent a fictitious version of

---

[3] In its opposition to Kahan's motion for leave to amend, Chase has consented in writing to the addition of this affirmative defense. Accordingly, leave of the Court is not required for Kahan to amend its pleadings to include paragraph 53 of the proposed amended pleading, which reads, "The Funds that are the subject of this action were not stolen," Kahan's Proposed Am. Pleading ¶ 53, Mot. Leave Amend Ex. A, April 15, 2010, ECF No. 72-2. *See* Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent *or* the court's leave." (emphasis added)).

5

the September 2009 events in which an unknown imposter initiated the transfer of funds from Yao's account, even though all three knew that Yao himself had requested the transfers.

## DISCUSSION

A.  *The Legal Standard*

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits a party to amend its pleadings at any time before trial with leave of the court.  The rule directs courts to "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but a district court may deny leave in the event of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000); *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

To determine whether an opposing party will be prejudiced, a court must consider "whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  *Monahan*, 214 F.3d at 284 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Generally, where the opposing party has knowledge of the facts giving rise to the proposed amendments, and the addition of new claims or defenses will not cause unfair surprise, amendment should be allowed.  *See id.* at 284 (allowing amendment, though untimely, where addition of defense "did not unfairly surprise plaintiffs or impede the fair prosecution of

their claims"); *Block*, 988 F.2d at 350-51 (allowing amendment to assert affirmative defense in motion for summary judgment four years after commencement of the action, because plaintiffs had knowledge of facts on which defendants sought to rely).

However, "the purpose of pleading is to facilitate a proper decision on the merits," *United States v. Hougham*, 364 U.S. 310, 317 (1960) (internal quotation marks omitted). Accordingly, even in the absence of prejudice, leave to amend is properly denied where a proposed amendment is without merit. *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990); *see also Valdan Sportswear v. Montgomery Ward & Co.*, 591 F.Supp. 1188, 1191-92 (S.D.N.Y., 1984) (denying leave to amend where proposed amendment was "patently without substance"). *Cf. Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Courts in the Second Circuit deny leave to amend on the basis of futility where "the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *Tri-State Judicial Services, Inc. v. Markowitz*, 624 F.Supp. 925, 926 (E.D.N.Y. 1985) (citations omitted); *see also S.S. Silberblatt, Inc. v. East Harlem Pilot Bock Building 1Housing Devel. Fund Co., Inc.*, 608 F.2d 28, 42 (2d Cir. 1979) ("A trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of action.").

Therefore, in order to determine whether Kahan's proposed claims are futile, I look to the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. To state a claim that would survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

7

*Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible only if the pleaded facts permit a court to reasonably infer that the plaintiff is entitled to relief. *Id*. When deciding the viability of Kahan's claims, I must accept all Kahan's factual allegations as true and draw all reasonable inferences in Kahan's favor. *See Shomo v. City of New York*, 570 F.3d 176, 183 (2d Cir. 2009).

B.  *The Proposed Conversion Claims*

Chase argues that Kahan's motion for leave to assert conversion claims against Chase and Fan should be denied because such claims would be futile for three reasons. First, Chase understands Kahan's proposed amended pleading to premise the claims for conversion on Chase and Fan's allegedly fraudulent reports to the United States Secret Service that the funds were stolen from Yao's account. According to Chase, financial institutions and their employees are immune from civil liability based on reporting a possible violation of law to the government, even when the report is made in bad faith. Second, Chase argues that Kahan has failed to allege facts sufficient to state a claim for conversion. Third, Chase contends that Kahan has not pled its conversion claim with the particularity required by Rule 9(b), which applies where a conversion claim is based on fraud.

In its reply to Chase's opposition, Kahan objects that Chase has misconstrued the basis for its proposed conversion claims. Kahan expresses its desire to "make perfectly clear that . . . whatever Chase and/or Fan may have told, or not told, the Secret Service, has nothing to do with the basis for Kahan's action for conversion." Reply Mem. Support Mot. Leave Amend 2, May 6, 2011, ECF No. 83. Rather, "the grounds for Kahan's conversion claims are Fan's and Chase's actions in purposefully 'interfering' with Kahan's rights to exercise dominion and control over the subject funds, by, *inter alia*, demanding that TD Bank remit those funds to

8

Chase, and later making false claims in this proceeding regarding the rightful ownership of such funds and the transactions underlying the transfer of such funds by and to Chase's customer, Yao." *Id*. Kahan further clarifies that Chase's alleged interference with Kahan's possession of the funds began after the Secret Service had returned the funds to TD Bank for deposit into Kahan's account, when Chase requested that TD Bank remit the funds to Chase." *Id*. at 4. Accordingly, I must determine whether Kahan's allegations concerning Chase's and Fan's activities since the April 29, 2010 dismissal of the government's forfeiture action are sufficient to support a claim for conversion against either the bank or its employee. I conclude that they are not and deny leave to amend on the basis that the proposed claims for conversion could not survive a motion to dismiss. I therefore do not address Chase's arguments concerning immunity for statements made to the government and the requirements of Rule 9(b).

      1.     *The Proposed Conversion Claim Against Chase*

"Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259 (2002) (quoting *Vigilant Ins. Co. of America v. Housing Auth. of the City of El Paso, Texas*, 87 N.Y. 26, 29 (1932)); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) ("Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." (internal quotation marks omitted)). To state a claim for conversion, a party must allege facts sufficient to show that it has "been deprived of [its] property by [another's] unauthorized act, *in assuming dominion and control*," *Industrial & General Trust v. Tod*, 8 Bedell 233, 245 (N.Y. 1902) (emphasis added), for instance "by a

wrongful taking . . . or by a wrongful detention . . . or by a wrongful disposal," *Pierpoint v. Hoyt*, 260 N.Y. 26, 29 (N.Y. 1932). "[S]uch dominion and control is a necessary element of a conversion claim." *National Bank of Geneva v. Case Credit Corp.*, 828 N.Y.S.2d 749 (4th Dep't 2007); *see also Ehrlich v. Froehlich*, 903 N.Y.S.2d 400 (2d Dep't 2010) (defendants could not be held liable for conversion where they never exercised dominion or control over the disputed property).

Kahan has failed to allege that Chase ever exercised dominion or control over the impleaded funds once they fell into dispute. Kahan bases its proposed conversion claim on Chase's assertions that it is the rightful owner of the money, both in informal communications with TD Bank and in formal filings in the present action. When Chase first informed TD Bank in October 2009 that the $2.089 million had been stolen from the account of one of its customers, the money was in a TD Bank account in Kahan's name. Subsequently, the money was placed in the registry of the court. Accordingly, although Chase has asserted a claim to the funds, it has never had the ability to control them. In such circumstances – where the defendant does not have the disputed property "in any way under his control or in his possession" – "mere words" asserting ownership do not constitute a conversion. *Gillet v. Roberts*, 12 Sickels 28 (N.Y. 1874).

Kahan argues that Chase's demand on the funds caused TD Bank to file its complaint in interpleader and to deposit the money with the Clerk of the Court. Kahan's argument implies that, absent Chase's claim, TD Bank would have allowed Kahan to take possession of the funds after they were returned to his TD Bank account in compliance with my April 29, 2010 order dismissing the government's *in rem* action. According to Kahan, Chase continues to block Kahan's access to the money by maintaining cross-claims in this action and

refusing to relinquish its claims of ownership. What Kahan terms Chase's ongoing "'interference' with Kahan's right to dominion and control of its property and funds," Mem. Supp. Mot. Leave Amend 12, is indirect at best. At all times that Kahan has been denied possession of the funds, they have been under the control of either TD Bank or the Clerk of the Court, neither of which is an agent of Chase. Chase may have influenced, but cannot control their actions.

        A decision of the Appellate Division, First Department, is particularly instructive. In *Wembach Corporation v. Emigrant Industrial Savings Bank*, the plaintiff allegedly owned certain furnishings in a residence club, while the defendant bank held a mortgage on the realty and fixtures. 34 N.Y.S.2d 688 (1st Dep't 1942), *aff'd*, 289 N.Y. 662 (1942). The mortgage went into foreclosure and a receiver was appointed by court order. The bank directed the receiver to take possession of the whole premises, including the furnishings, which the plaintiff alleged were not subject to the mortgage. The receiver followed the bank's direction, and as a result, the plaintiff was allegedly deprived of possession of its goods. The complaint asserted a claim for conversion on the basis that the bank exercised dominion and control over the furnishings because the receiver had taken possession at the bank's direction and for the bank's benefit. But the court held that the conversion claim should be dismissed because the bank did not itself exercise control over the property, and the receiver, which did exercise control, was not its agent. *Id.* at 691-92. "Merely to allege that the bank 'directed' the receiver to take property outside of the mortgage . . . does not show an unlawful exercise of dominion, for it does not allege facts showing that the receiver was the bank's agent. . . . In making suggestions to the receiver to seize

11

the furnishings involved, or in refusing to return something which was not in its possession, no dominion was exercised by the bank, for the property was not under its control." *Id.* at 692.

The facts of the case before me parallel those in *Wembach*. Just as the bank in *Wembach* advised the receiver that the furniture was covered by the mortgage, Chase informed TD Bank that it was the rightful owner of the $2.089 million, but Chase could not control TD Bank's actions or the money it claimed to own. And now the Clerk controls the funds (subject to the direction of the Court), not Chase. Chase's claim of ownership influences the Court's treatment of the funds, but it does not control. Kahan has failed to allege that Chase exercises, or has at any time exercised, dominion over the funds in derogation of Kahan's alleged possessory right.[4] *See Wembach*, 34 N.Y.S.2d at 692 ("Merely verbal assertion of the right to possession will not be deemed an unlawful exercise of dominion, unless the words are uttered under such circumstances as to indicate an intention to control possession, and are coupled with an apparent ability to do so."). Accordingly, an amendment asserting a claim for conversion against Chase would be futile.

2.   *The Proposed Conversion Claim Against Fan*

Kahan's proposed claim for conversion against Fan would likewise be futile because Kahan has not alleged that Fan ever exercised control or dominion over the funds. Even

---

[4] In this respect, Kahan's proposed claim for conversion is distinct from Chase's cross-claim for conversion. Chase alleges that in October of 2009, the disputed funds were in Kahan's TD Bank account. Chase informed TD Bank that the money had been stolen and demanded its return. "On information and belief, TD Bank informed Kahan that the Funds were procured by fraud and that Chase had demanded their return . . . . Kahan refused to permit TD Bank to return the Funds." Chase's Answer and Cross-Claims ¶¶ 34-36, Aug., 10, 2010, ECF No. 25. These allegations establish a reasonable inference that the $2.089 million in Kahan's account were under Kahan's control in October 2009, before they were seized by the Secret Service, that Chase made a demand for their return, and that Kahan refused to comply. These allegations are sufficient to state a claim for conversion. *See Pierpoint*, 260 N.Y. at 30 (where one party is the owner and entitled to possession, and the other is in possession and "after notice and demand for a delivery . . . refuse[s] without qualification to comply[, t]hat ordinarily is conclusive evidence of a conversion" (citing *McEntee v. New Jersey Steamboat Co.*, 45 N.Y. 34 (1871))).

if a mere assertion of ownership, rather than actual control, were sufficient to sustain a claim for conversion, Kahan's claim against Fan would fail. Fan did not demand that TD Bank remit the funds to her, and she has not asserted any claims to the funds in this action. Kahan seeks to hold Fan liable for the alleged conversion of the $2.089 million since dismissal of the government's *in rem* action in April 2009, but he has not alleged any actions taken by Fan since that time – or before – to assert control over the disputed funds. Since April 2009, Fan is alleged only to have made false statements in connection with this litigation that tend to support Chase's claim of ownership. Clearly, a witness in a civil action concerning the ownership of property cannot be held liable for converting that property solely on the grounds that her statements undermine the claims of the property's alleged true owner.

C.   *The Proposed Prayer for Punitive Damages*

Kahan seeks leave to amend its complaint to include a prayer for punitive damages against Chase and Fan. Chase argues that amending the pleadings to contain a prayer for punitive damages would be futile because punitive damages are not available where Kahan has failed to allege a wrong to the public at large. Kahan correctly counters that no showing of public harm is required where exemplary damages are sought in connection with a claim for conversion. *See* 23 N.Y. Jur. 2d Conversion § 75 (2011) ("Punitive damages may be recovered for the conversion of personalty where the circumstances show that the conversion was accompanied by malice, insult, reckless and willful disregard of the plaintiff's rights, or other proof showing the aggravated nature of the act." (citations omitted)).

However, where Kahan has failed to state a claim for conversion, and its pleadings do not contain any other claim for compensatory damages, there can be no claim for

13

punitive damages. *See Prote Contracting Co., Inc. v. Board of Educ. of City of New York*, 714 N.Y.S.2d 36, 37-38 (1st Dep't 2000) ("[I]n view of the dismissal of defendant's counterclaims, its claim for punitive damages should have been dismissed as well, since there exists no cause of action upon which a demand for punitive damages can be grounded."); *Omansky v. 64 N. Moore Associates*, 703 N.Y.S.2d 471, 472 (1st Dep't 2000) ("The motion court correctly dismissed plaintiffs' prayer for punitive damages, since the only cause of action on which such a prayer was passed has been dismissed for mootness[.]"); *Rock v. Sear-Brown Associates, P.C.*, 524 N.Y.S.2d 935, 936 (4th Dept 1988) (where plaintiff failed to state a claim for conversion, "[p]laintiff's separate cause of action for punitive damages is not recognized in New York."); *North American Co. for Life and Health Ins. Of New York v. Pennington*, 518 N.Y.S.2d 500, 501 (4th Dep't 1987) ("Absent a claim of compensatory damage, defendant may not recover punitive damages."). Accordingly, leave to amend to include a prayer for punitive damages is denied.

D.      *The Proposed Claims for Declaratory Judgment*

In its August 10, 2010 answer to TD Bank's complaint, Kahan asserted a cross-claim against Chase for a declaration that Kahan is the true owner of the interpleaded funds, and that it is entitled to attorneys' fees, costs and disbursements. The declaratory judgment claim in the August 10 pleading does not specify or limit the grounds on which the declaration is sought. Now Kahan wishes to amend its pleadings to replace its broad claim for declaratory relief with two claims for declaratory relief premised specifically on the allegations that (a) Kahan received the funds in connection with a bona fide sale for value, and (b) the funds were never fraudulently transferred. Chase notes that Kahan has previously alleged that it was a bona fide purchaser for value, has declined to admit that the funds were stolen, and has sought declaratory relief on the

14

basis of those and all other matters already at issue in the litigation. According to Chase, amending the pleadings to assert these two new claims for declaratory relief would be duplicative.

I agree that Kahan's proposed amendment is unnecessary, as the claims for declarations that Kahan wishes to add have already been stated implicitly. However, I disagree that this is a basis for denying Kahan's motion for leave to amend to specify the grounds on which it seeks a declaration. Chase acknowledges that the questions of whether the funds were stolen from Yao's account and whether Kahan obtained them for value and in good faith from Golden On Star Limited are already at issue in the litigation. Therefore, Chase will not be prejudiced if Kahan is permitted to amend its complaint to specify that it is entitled to the declaration it seeks on those particular grounds. Accordingly, Kahan is granted leave to amend its pleadings to incorporate paragraphs 82 through 86 and 88 through 92 of the proposed amended pleading.

D.   *The Proposed Factual Allegations*

The proposed amended pleading that Kahan has submitted in connection with its motion includes numerous factual allegations not contained in Kahan's previous pleadings. Most of these allegations seem irrelevant to Kahan's claims that the funds were not stolen, and that Kahan obtained them in good faith and for value. Whether the funds were stolen from Yao's Chase account depends on whether Yao or an imposter initiated the September 2009 transfers from Yao's Chase account, and whether, as Kahan alleges, Yao owned and controlled Golden On Star Limited and its HSBC account. Whether Kahan was a bona fide purchaser for value depends on whether Kahan engaged in a good faith exchange with Golden On Star Limited in

15

September 2009, in which it traded gold and platinum bars for the disputed $2.089 million, and whether Kahan knew the funds it received were stolen. The circumstances surrounding the 2006 opening of Yao's Chase account, and whether procedures or regulations pertaining to that event were followed or ignored by Chase and Fan, have insufficient bearing on Kahan's claims and defenses to warrant an amendment of the pleadings.

The purpose of pleadings is to provide notice of the claims and defenses at issue in an action in order to enable the parties to prepare for trial with an understanding of the nature of the case. *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). Leave to amend pursuant to Rule 15(a) should be liberally granted to ensure that claims are properly presented so they may be decided on the merits. *Foman*, 371 U.S. 182. Rule 15(a) is not meant "to allow amendments for the sole purpose of obtaining evidentiary details that would be available through the discovery process." 6 Wright & Miller, Fed. Prac. & Proc. § 1473 (3d ed. 2010); *see also Galdi v. Jones*, 141 F.2d 984 (2d Cir. 1944) ("[W]hen the case is again in the district court, the trial judge may well consider it desirable not to require such amendments of the complaint, involving evidentiary details, but instead to allow the defendants to seek the desired information by other means available under the Rules."). Kahan has adequately presented and may pursue its claims and defenses without overburdening the pleadings with an abundance of factual allegations of questionable relevance.

To the extent that the facts Kahan seeks to include in its pleadings are relevant to its claims for declaratory relief, they are already the subject of discovery and may be argued on summary judgment or at trial whether or not they appear in the pleadings. To the extent that they are not relevant to the merits of Kahan's claims and defenses, their inclusion in the pleadings

would serve only as a distraction and a possible basis for drawing out an already overly-contentious discovery process that has dragged on long past its original deadline of March 30, 2011. Accordingly, leave to amend the pleadings to include the numerous factual allegations not already contained in Kahan's August 10, 2010 and October 28, 2010 pleadings is denied.

## CONCLUSION

For the reasons stated above, Kahan's motion for leave to amend is granted in part and denied in part. On consent of the parties, Kahan may amend its pleadings to include paragraph 53 of the proposed amended pleading. By order of the Court, Kahan may also amend its pleadings to include paragraphs 82 through 86 and 88 through 92 of the proposed amended pleading. Leave to amend the pleadings in all other respects is denied.

The paragraphs with respect to which leave has been granted explicitly set forth matters that have long been at issue in the litigation. Accordingly, this order should not be read as a license to further expand the discovery process. The presiding magistrate judge is respectfully requested to ensure that discovery is completed by June 28, 2011. The motions for summary judgment that were discussed at the oral argument on May 13, 2011 shall be filed on or before July 18, 2011; oppositions to the motions shall be filed on or before August 1, 2011; and replies shall be filed on or before August 8, 2011. Oral argument on the summary judgment motions is scheduled for August 24, 2011 at 10:30 AM. If the case proceeds to trial, the trial will begin on Monday, September 12, 2011 at 9:30 AM.

17

So ordered.

John Gleeson, U.S.D.J.

Dated: May 13, 2011
       Brooklyn, New York